RONNI RENEE HALL, Plaintiff v. STEVEN HAROLD HALL, Defendant

No. COA07-624

(Filed 5 February 2008)

**1. Child Custody, Support, and Visitation— custody—findings**

The trial court did not abuse its discretion in a divorce action by awarding primary physical custody of the children to plaintiff mother. The court is required to order custody to the person who will best promote the interest and welfare of the children and must consider all relevant factors, but need only find those facts which are material. Here, the findings challenged by defendant are supported by competent evidence.

**2. Child Support, Custody, and Visitation— custody—best interest of the children**

The trial court did not abuse its discretion in a child custody action in determining the best interest of the children. Even if the trial court erred in making challenged findings of fact, the court's conclusion regarding the best interest of the children is supported by sufficient findings of fact.

**3. Child Support, Custody, and Visitation— custody—decision-making responsibilities divided—findings required**

The trial court erred when determining the custody of the children in a divorce action in its division of decision-making responsibilities. The court made no findings that a split in decision-making was warranted; on remand, the court may allocate decision-making authority between the parties, but must set out specific findings as to why deviation from pure joint legal custody is necessary.

**4. Child Support, Custody, and Visitation— custody—parenting coordinator**

The trial court in a divorce action did not follow the statutory mandates required before a parenting coordinator may be appointed to decide disputes concerning the children. The findings required by N.C.G.S. § 50-91 must be made.

Appeal by defendant from an order entered 3 August 2006 by Judge Joyce A. Hamilton in Wake County District Court. Heard in the Court of Appeals 28 November 2007.

*Wake Family Law Group, by Julianne Booth Rothert and Marc W. Sokol, for plaintiff-appellee.*

*Kristoff Law Offices, P.A., by Sharon H. Kristoff, for defendant-appellant.*

HUNTER, Judge.

On 3 August 2006, an order for custody and divorce from bed and board was entered, awarding Ronni Renee Hall ("plaintiff") and Steven Harold Hall ("defendant") joint legal custody of the minor children. The order granted plaintiff primary physical custody and defendant secondary physical custody. The order further provided that plaintiff shall have decision-making authority regarding all issues affecting the minor children except for sports and extracurricular

**HALL v. HALL**

[188 N.C. App. 527 (2008)]

activities, which shall be decided jointly between the parties. If the parties are unable to reach a decision regarding sports and extracurricular activities, a parenting coordinator has decision-making authority. From this order, defendant appeals. After careful consideration, we affirm in part and reverse and remand in part.

Plaintiff and defendant were married on 17 May 1990. Two children, Christiana and Steven, were born of the marriage. The trial court found that plaintiff was "nurturing, listens to the children, and is more emotionally attuned to their needs than the [d]efendant." The trial court also found that during the parties' marriage, defendant was insensitive, controlling, and at times, " 'body slammed' " plaintiff.[1]

Prior to April 2004, the trial court found that plaintiff had contact with a married man, Russell Broadway ("Broadway"). When defendant was out of town, Broadway would come over to the parties' marital residence around midnight and stay for fifteen minutes. Plaintiff and Broadway exchanged emails and went on a picnic together. Plaintiff wrote Broadway a poem in which she described him as her " 'favorite guy.' "

In April 2004, defendant discovered the relationship between plaintiff and Broadway. Although defendant did not suspect that plaintiff had committed adultery with Broadway, defendant told plaintiff and others that he would brand a letter " 'A' " on her forehead. Plaintiff admitted that she was not truthful about her contact with Broadway.

Since April 2004, the trial court found that defendant became more involved with the children, working with them on homework, taking them to athletic events, cooking and cleaning for them, and regularly volunteering at their school. Defendant became particularly involved with both children in athletic events, but he has also participated in Indian Princesses and Indian Guides with the children and taught them to ride bicycles.

After attempting to work on their marriage, the parties ultimately separated on 21 September 2005.

Defendant presents two issues for this Court's review: (1) whether the trial court abused its discretion in making its custody

---

1. Plaintiff described the "body slam[s]" as an altercation in which defendant would invade her physical space as they were passing through a doorway wide enough for two people. Instead of making room for plaintiff, defendant would "body" her out of the way. She also testified that defendant would physically hold her down on the bed so that she could not move when he was angry with her.

decision; and (2) whether the trial court erred in determining decision-making authority over the children's activities.

I.

[1] Defendant first argues that the trial court abused its discretion in awarding primary physical custody to plaintiff. We disagree.

Under N.C. Gen. Stat. § 50-13.2(a) (2005), the trial court is required to order custody of minor children to the person that "will best promote the interest and welfare of the child." The statute also mandates that the trial court "consider all relevant factors . . . and . . . make findings accordingly." *Id.*; *see also In re Cox*, 17 N.C. App. 687, 689, 195 S.E.2d 132, 133 (1973) ("in custody cases[,] the welfare of the child is the 'polar star' by which the [trial] court's decision must be guided"). "[T]he trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute." *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990). This Court has recognized that the trial judge is in the best position to make such a determination as he or she "can detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges." *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979). Accordingly, the trial judge is vested with broad discretion in custody cases and will not be overturned absent an abuse of discretion. *In re Cox*, 17 N.C. App. at 689, 195 S.E.2d at 133.

When the trial court finds that both parties are fit and proper to have custody, but determines that it is in the best interest of the child for one parent to have primary physical custody, as it did here, such determination will be upheld if it is supported by competent evidence. *Sain v. Sain*, 134 N.C. App. 460, 464, 517 S.E.2d 921, 925 (1999). A trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is evidence to support them. *Id.* Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo*. *Id.* We address the trial court's findings of fact and challenged conclusion of law in turn.

A.

Defendant argues that certain findings of fact made by the trial court were unsupported by competent evidence. We disagree and address each challenged factual finding in turn.

In relevant part, finding of fact number thirty-six states that plaintiff "left the marital residence [on 21 September 2005,] taking the children with her. Defendant did not see the children for perhaps 6 days after [p]laintiff moved out of the marital home, but was allowed to talk to them." Defendant argues that the undisputed evidence shows that plaintiff told defendant she was taking the children to visit her parents in Georgia, and made no mention of the fact she was leaving defendant and taking the children. Defendant makes only a conclusory argument that this alleged "wrongdoing" was relevant to the best interests of the children. We, as the trial court likely concluded, do not find defendant's factual arguments, even if true, to affect the best interest of the children. This is especially true here, where there were findings of fact, supported by competent evidence, of defendant " 'body slamm[ing]' " plaintiff.

Defendant also argues that finding of fact number five is not supported by competent evidence. For the reasons discussed in footnote two of this opinion, we find defendant's arguments on this issue to be without merit as he has grossly mischaracterized the trial court's finding of fact on that issue.

Defendant next argues that finding of fact number ten, which states that defendant's work schedule was unpredictable while plaintiff generally worked at home and later at night so as to not impact the children, was not supported by competent evidence. Essentially, defendant argues that his work schedule is quite flexible and that he averaged traveling one night per week. Testimony at trial, however, suggested that defendant traveled between two and three nights a week before marital problems arose and that he traveled less after the marital problems. The trial court merely stated that defendant's schedule *was* unpredictable, which, from the testimony presented, was a reasonable finding. Thus, finding of fact number ten was supported by competent evidence.

Defendant's last argument with regard to the trial court's findings of fact, is that findings number sixteen and thirty-four set forth an erroneous timeline of events. We disagree.

In finding of fact sixteen, the trial court concluded that "[s]ince April of 2004, [d]efendant has worked with the children on their homework, taken them to numerous athletic and other activities, cooked and cleaned for them and has regularly volunteered at their school." Finding of fact thirty-four states that after learning about plaintiff's "inappropriate behavior" with another man, defendant

"began to spend more time with the children, and stayed in town" more frequently. Defendant argues that these findings imply that he did not do the things listed in findings sixteen and thirty-four before April 2004. Regardless of the implication, there is competent evidence in the record to support such a finding that defendant became, according to testimony, more "visible" with the children after April 2004. Accordingly, the findings of fact challenged by defendant are supported by competent evidence and defendant's assignments of error as to those findings are rejected.

B.

[2] Defendant's sole argument as to the trial court's conclusions of law is that the trial court erred in making the "best interest[] of the children" determination, as it was not supported by the trial court's findings of fact. We disagree.

Before awarding primary physical custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody to that particular party will be in the best interest of the child. N.C. Gen. Stat. § 50-13.2(a). Such a conclusion must be supported by findings of fact. *In re Poole*, 8 N.C. App. 25, 29, 173 · S.E.2d 545, 548 (1970). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978). "These findings cannot, however, be mere conclusions." *Hunt v. Hunt*, 112 N.C. App. 722, 728, 436 S.E.2d 856, 860 (1993).

In the instant case, defendant argues that some of the trial court's findings of fact were "mere conclusions." Specifically, defendant argues that four of the trial court's findings of fact were not findings of fact, but mere conclusions. Assuming, *arguendo*, that those findings of fact were only conclusions, the record still contains findings of fact, not challenged by defendant or already determined to be supported by competent evidence by this Court, to support the trial court's "best interest" determination.

Specifically, finding of fact number eight states that plaintiff "took the children for haircuts, bought their clothes and school supplies, volunteered at their school and was a room mother, and took the children on play dates." The trial court also found that plaintiff took the children to the doctor and stayed home with them when they were ill. Finally, the trial found as a fact that plaintiff took a six month

leave of absence from her employment to stay with Christiana when she was born and a five month leave when Steven was born.

Contrary to these findings, the trial court found that defendant would only "occasionally take the children to the doctor, would sometimes attend birthday parties and would volunteer at school on occasion." Moreover, "[d]efendant's work schedule was unpredictable and he was regularly out of town one to three nights each week." The trial court also found that "[d]efendant countermanded [p]laintiff on a number of occasions when she . . . was disciplining the children[,]" referred to Christiana as a " 'drama queen,' " and Steven as a " 'Mama's boy.' " Finally, the trial court found that "[d]efendant 'body slammed' the [p]laintiff 20 to 50 times during the marriage[, and] threatened to punch his brother-in-law in the nose." Under N.C. Gen. Stat. § 50-13.2(a), a relevant factor in making a custody determination is "acts of domestic violence between the parties[.]" Under such circumstances, we cannot say that the trial court committed a manifest abuse of discretion in awarding plaintiff primary physical custody of the children.[2] Although defendant argues that the trial court should have made less complimentary findings as to plaintiff, we are not in a position to re-weigh the evidence.

Here, even assuming the trial court erred in making the challenged findings of fact, the trial court's legal conclusion regarding the best interest of the children is supported by sufficient findings of fact. Accordingly, defendant's assignments of error as to this issue are rejected.

II.

[3] Defendant's final argument is that the trial court erred in dividing decision-making responsibilities between the parties after awarding joint legal custody. We agree.

The trial court's order granted joint legal custody to both parties. Plaintiff, however, was to "have decision-making authority

---

2. Defendant spends a significant portion of his brief devoted to the trial court's finding as to which party was the primary care giver. Defendant argues that the trial court erred in determining that the mother was the primary care giver. Although defendant has not established how such a determination would require a remand, he has also grossly mischaracterized the trial court's finding on that issue. Specifically, the trial court found that during a six month period of time after Christiana's birth, the parties shared care taking responsibilities. The trial court found that when they were not sharing or rotating responsibilities, plaintiff "was the primary caregiver the rest of the time." This is not, as defendant contends, a finding that plaintiff was the primary caregiver of both children at all times.

regarding all issues affecting the minor children except for issues regarding sports and extracurricular activities[.]" Where the parties could not agree on issues related to sports and extracurricular activities, a parent coordinator would "have decision-making authority on these issues."

"Although not defined in the North Carolina General Statutes, our case law employs the term 'legal custody' to refer generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare." *Diehl v. Diehl*, 177 N.C. App. 642, 646, 630 S.E.2d 25, 27 (2006), *see also* 3 Suzanne Reynolds, *Lee's North Carolina Family Law*, § 13.2b, at 13-16 (5th ed. 2002) (legal custody includes "the rights and obligations associated with making major decisions affecting the child's life"). As a general matter, the trial court has "discretion to distribute certain decision-making authority that would normally fall within the ambit of joint legal custody to one party rather than another based upon the specifics of the case." *Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 28. In order to exercise its discretion, however, the trial court must make "sufficient findings of fact to show that such a decision was warranted." *Id.*

In *Diehl*, the trial court granted joint legal custody to both parties, but

> the court went on to award "primary decision making authority" on all issues to Ms. Diehl unless "a particular decision will have a substantial financial effect on [Mr. Diehl] . . . ." In the event of a substantial financial effect, however, the order still does not provide Mr. Diehl with any decision-making authority, but rather states that the parties may "petition the Court to make the decision . . . ."

*Id.* at 646, 630 S.E.2d at 28 (alteration in original). As to the findings made to support such an abrogation of authority, the trial court in *Diehl* found that " '[t]he parties are currently unable to effectively communicate regarding the needs of the minor children.' " *Id.* at 647, 630 S.E.2d at 28 (alteration in original). The *Diehl* trial court also made findings that

> Ms. Diehl has occasionally found it difficult to enroll the children in activities or obtain services for the children when Mr. Diehl's consent was required, as his consent is sometimes difficult to obtain; and when John's school recommended he be evaluated to

determine whether he suffered from any learning disabilities, Mr. Diehl refused to consent to the evaluation unless it would be completely covered by insurance.

*Id.* In that case, this Court reversed and remanded the trial court's decision, holding that findings related to failure to communicate and obtain consent when required are insufficient to abrogate a parent's decision-making authority when granting joint legal custody. *Id.* at 648, 630 S.E.2d at 29.

Defendant argues that *Diehl* controls the instant case in that all of defendant's decision-making authority has been abrogated. Plaintiff counters that his authority has not been completely abrogated, as the parties are required to share decision-making responsibilities regarding the children's athletic and extracurricular activities. That said, were there to be an unresolvable dispute as to that issue, a parent coordinator would, like the trial court in *Diehl*, make the final decision.

A careful reading of *Diehl*, however, reveals that this Court's ultimate holding was that upon an order granting joint legal custody, the trial court may only deviate from "pure" legal custody after making specific findings of fact. The extent of the deviation is immaterial, so while the order in *Diehl* is distinguishable from the one in the instant case in terms of the authority granted to the respective defendants, that is not the relevant inquiry. Accordingly, this Court must determine whether, based on the findings of fact below, the trial court made specific findings of fact to warrant a division of joint legal authority.

In this case, as in *Diehl*, the trial court concluded that defendant was a fit and proper person for joint legal custody. The trial court, however, made no findings that a split in the decision-making was warranted. Instead, the trial court made numerous findings regarding the parties' tumultuous relationship, which, as in *Diehl*, merely support the trial court's conclusion to award primary physical custody to plaintiff. Moreover, the trial court did not even make findings that this Court held to be insufficient on their own in *Diehl*, regarding inability to communicate and availability to consent. Accordingly, we reverse the trial court's ruling regarding the decision-making and remand for further proceedings regarding the issue of joint legal custody. On remand, the trial court may allocate decision-making authority between the parties again; however, were the court to do so, it must set out *specific findings* as to why deviation from "pure" joint

legal custody is *necessary*. Those findings must detail why a deviation form "pure" joint legal custody is in the *best interest of the children*.[3] As an example, past disagreements between the parties regarding matters affecting the children, such as where they would attend school or church, would be sufficient, but mere findings that the parties have a tumultuous relationship would not.

**[4]** We also address defendant's arguments concerning the use of a parenting coordinator to decide disputes that are unresolvable by the parties. Defendant argues that the trial court failed to follow the statutory mandates required before a parenting coordinator may be appointed. We agree.

N.C. Gen. Stat. § 50-90 (2005) sets forth the statutory authority for parenting coordinators and defines the terms. Under N.C. Gen. Stat. § 50-91(b) (2005), a parenting coordinator may be appointed when "the [trial] court . . . makes specific findings [1] that the action is a high-conflict case, [2] that the appointment of the parenting coordinator is in the best interests of any minor child in the case, and [3] that the parties are able to pay for the cost of the parenting coordinator." Although there was evidence presented regarding all three issues, the trial court did not make specific findings as to each. Accordingly, upon remand, if the trial court decides the use of a parenting coordinator is appropriate, the findings required by N.C. Gen. Stat. § 50-91 must be made.

### III.

In summary, we hold that the trial court did not abuse its discretion in awarding primary physical custody to plaintiff. We also find no error with the trial court's "best interest" determination. Finally, we reverse and remand the trial court's order regarding the decision-making authority between the parties.

Affirmed in part, reversed and remanded in part.

Judges CALABRIA and STROUD concur.

---

3. There is no presumption in favor of joint custody; however, it must be considered by the trial court upon the request of either parent. N.C. Gen. Stat. § 50-13.2(a). Thus, the trial court may grant legal custody only to one party, joint custody to both, or, if proper findings are made, joint legal custody with a split in decision-making authority.