An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1195

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

DAVID L. MCGRAW,
    Plaintiff,

v.                                    Johnston County
                                      No. 08 CVD 0985
HOLLY MCGRAW,
    Defendant.


Appeal by Defendant from order entered 19 April 2013 by Judge Paul A. Holcombe III in Johnston County District Court. Heard in the Court of Appeals 5 March 2014.


> *Cranfill Sumner & Hartzog LLP, by Michelle D. Connell, for Plaintiff.*

> *Mast, Mast, Johnson, Wells & Trimyer, by Ron L. Trimyer, Jr., for Defendant.*


STEPHENS, Judge.


*Procedural and Factual History*

Plaintiff David L. McGraw and Defendant Holly McGraw were married in November 2003, separated in March 2008, and subsequently divorced. During their marriage, the parties had

one child together ("the child"),[1] born in 2004. After the parties separated, Plaintiff filed an action for custody and child support in March 2008. Following mediation, a document stating that the parties had reached a full agreement regarding custody was entered 24 April 2008. The agreement does not appear in the record but the trial transcript suggests that the parties essentially shared equal time with the child, with each parent having custody for two days each week and on alternating weekends. This arrangement appears to have continued until the custody trial.[2]

Defendant remarried in 2009 and has two children with her new husband. Plaintiff remarried in 2011. The parties attended counseling concerning co-parenting the child, but experienced friction regarding the roles played by the stepparents of the child, particularly Defendant's objection to the significant involvement of Plaintiff's new wife ("the stepmother") with the child. On 28 February 2012, Defendant filed an answer and counterclaim for custody of the child. On 3 April 2012, the parties entered into a temporary consent order sharing equal

---

[1] In this opinion, we refer to the parties' child as "the child" in an effort to protect her identity.
[2] The custody matter was heard during the 15 November 2012 and 1 February 2013 terms of the district court in Johnston County.

time with the child. On 16 November 2012, an additional order was entered regarding the child's Thanksgiving and Christmas custody schedule. After the matter had been heard in the trial court, on 19 April 2013, the court entered an order giving Plaintiff sole legal and primary physical custody of the child. Defendant appeals.

*Discussion*

On appeal, Defendant argues that the trial court (1) made legal conclusions not supported by sufficient findings of fact, (2) abused its discretion in awarding sole legal and primary physical custody to Plaintiff, (3) erred in failing to determine there had been a substantial change in circumstances affecting the child since entry of the parties' mediated custody agreement and April 2012 consent order, (4) erred in awarding sole legal custody to Plaintiff contrary to its announcement of joint legal custody in open court, and (5) erred in awarding physical custody of the child's softball medallion to Plaintiff. We reverse and remand.

*I. Standard of Review*

In a child custody matter,

> [t]he findings of fact are conclusive on appeal if there is evidence to support them, even if evidence might sustain findings to the contrary. The evidence upon which the

> trial court relies must be substantial evidence and be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal. The trial court's conclusions of law and orders will not be reversed if supported by the findings of fact.

*Everette v. Collins*, 176 N.C. App. 168, 170-71, 625 S.E.2d 796, 798 (2006) (citations omitted).

"Where [an appellant] fails to challenge any of the trial court's findings of fact on appeal, they are binding on the appellate court[.]" *Lewis v. Hope*, __ N.C. App. __, __, 736 S.E.2d 214, 217-18 (2012). However, "[w]hether those findings of fact support the trial court's conclusions of law is reviewable *de novo*." *Carpenter v. Carpenter*, __ N.C. App. __, __, 737 S.E.2d 783, 785 (2013) (citation omitted).

*II. Sufficiency of the Trial Court's Findings of Fact*

Defendant argues that the trial court's legal conclusions are not supported by sufficient findings of fact. We agree.

Child custody determinations are governed by N.C. Gen. Stat. § 50-13.2(a) (2013). Under that statute,

> the trial court is required to order custody of minor children to the person that will best promote the interest and welfare of the child. The statute also mandates that the trial court consider all relevant factors . . . and make findings accordingly. The

trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute.

*Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 903 (2008) (citations, internal quotation marks, and brackets omitted). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Id.* at 532, 655 S.E.2d at 905 (citations and internal quotation marks omitted).

> [*A*] *custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child*, and custody orders are routinely vacated where the "findings of fact" consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award.

*Dixon v. Dixon*, 67 N.C. App. 73, 76-77, 312 S.E.2d 669, 672 (1984) (citations omitted; emphasis added). "The quality, not the quantity, of findings is determinative." *Carpenter*, __ N.C. App. at __, 737 S.E.2d at 787. Crucially, the findings of fact

must "*resolve the primary issues raised by the evidence* which bear directly upon the child's welfare." *Id.* (emphasis added).

For example, in *Carpenter*, "[t]he primary disputed issues regarding the child's welfare . . . were [the] defendant's allegations of excessive alcohol consumption by [the] plaintiff, conflicts in the parties' parenting styles, and [the child's] resulting anxiety." *Id.* Upon review, we noted that the custody order made "findings regarding the evidence and contentions of each party on these issues, but resolve[d] few of them." *Id.* Even where the order resolved disputed matters, it did so "without relating the findings to [the child's] needs or best interest. It is difficult to discern the meaning of some of the findings, or at least how the findings relate to the child's welfare." *Id.* at __, 737 S.E.2d at 789. As a result, we reversed and remanded to the trial court for "additional findings of fact, as well as conclusions of law and decretal provisions based upon those findings." *Id.* at __, 737 S.E.2d at 790; *see also In re Kowalzek*, 37 N.C. App. 364, 370, 246 S.E.2d 45, 48 (vacating where disputed issues were not resolved in the custody order), *appeal dismissed and disc. review denied*, 295 N.C. 734, 248 S.E.2d 863 (1978).

In contrast, this Court found in *Hall* that the conclusions of law regarding custody were sufficiently supported where the trial court found

> that [the] plaintiff took the children for haircuts, bought their clothes and school supplies, volunteered at their school and was a room mother, and took the children on play dates. The trial court also found that [the] plaintiff took the children to the doctor and stayed home with them when they were ill. Finally, the trial court found as a fact that [the] plaintiff took a six month leave of absence from her employment to stay with Christiana when she was born and a five month leave when Steven was born.
>
> Contrary to these findings, the trial court found that [the] defendant would only occasionally take the children to the doctor, would sometimes attend birthday parties and would volunteer at school on occasion. Moreover, [the] defendant's work schedule was unpredictable and he was regularly out of town one to three nights each week. The trial court also found that [the] defendant countermanded plaintiff on a number of occasions when she was disciplining the children, referred to Christiana as a drama queen, and Steven as a Mama's boy. Finally, the trial court found that [the] defendant body slammed the plaintiff 20 to 50 times during the marriage, and threatened to punch his brother-in-law in the nose.

*Id.* at 532-33, 655 S.E.2d at 905 (internal quotation marks, brackets, and ellipsis omitted). This Court held that those findings, particularly the finding of domestic abuse, were

sufficient to support an award of primary physical custody of the children to Plaintiff. *Id.*

Here, each party raised issues related to the child's welfare. Defendant expressed concerns that the stepmother was taking over Plaintiff's parenting duties, that Plaintiff was not responding in a timely fashion to emails from Defendant, and that the child's irritable bowel syndrome ("IBS") was not being properly handled by Plaintiff. Plaintiff testified that Defendant's multiple daily phone calls to the child were interfering with his custodial time and stated that Defendant was failing to adhere consistently to agreements and rules regarding the child. The testimony from the parties, the stepmother, and other witnesses also made clear that resentment and ill-will between the parties and between Defendant and the stepmother had led to friction, pettiness, poor communication, and limited cooperation among the central adults in the child's life.

The trial court heard two days of testimony from some eleven witnesses, including the parties, the stepmother, Defendant's new husband, the parties' parenting counselor, and various friends and acquaintances. The resulting custody order includes the following findings of fact:

1. Plaintiff and Defendant are currently residents of North Carolina and had been continuously for at least six months immediately preceding the institution of this action.

2. The parties were married on the 22nd day of November[] 2003, separated on the 14th day of March[] 2008, and subsequently divorced.

3. One child was born to the parties . . . [on] February 13, 2004.

4. The child currently resides in Johnston County, North Carolina where the child has resided continuously all of her life. Neither party has participated as a party, witness, or in any other capacity in any other litigation concerning the custody of the minor child in this or in any other state. North Carolina is the home state of the child.

5. Plaintiff married [the stepmother] on January 30, 2011. Prior to the marriage, [the stepmother] would spend significant amounts of time at the home of . . . Plaintiff, while the minor child was present. Defendant married [her new husband] in 2009. They have two children from their marriage, . . . age 2 and . . . age 8 months.

6. Plaintiff resides in the Antioch community in a home suitable for the minor child. Plaintiff's parents reside close by to Plaintiff. Defendant resided in Wilson with her new husband for about 2 and ½ years. She recently moved to the Micro/Selina area.

7. Plaintiff is employed at Interstate Glass in Wilson, North Carolina. He has been so

employed for 18 years. Defendant is unemployed, and stays at home caring for her and her husband's children. She previously worked at Food Lion, Pizza Inn, RBC Bank, KS Bank and other entities. The [stepmother] does not work outside the home but participates in a business promoting go-kart racing. Defendant's spouse . . . works at Credit Suisse in Durham.

8. The minor child has been diagnosed with irritable bowel syndrome, which has been treated.

9. The minor child attends Glendale-Kenly Elementary school. She is in the third grade. Her grades in school are excellent. Defendant attends most of the school functions and eats lunch with the child a couple of times per week. Plaintiff is unable to attend many school functions because of his employment, but [the stepmother] attends most of the school functions.

10. The minor child participates in softball and cheerleading. Plaintiff signed the child up for softball without consulting []Defendant. Both Plaintiff and Defendant attended her games and practices. The parties had conflicts over who would have possession of the child's softball uniform and medallions the child was awarded during softball.

11. The child and parties have attended counseling with Marlene Hubbell. Ms. Hubbell worked with the parties to establish rules for the minor child that would be consistent in both homes.

12. Plaintiff and Defendant communicated with each other over matters involving the minor child by email. Defendant complained

that Plaintiff often would not respond to emails from []Defendant. Plaintiff explained that he did not have access to his personal email at his employment and would usually respond to Defendant's messages at night.

13. Both parties have engaged in some responses to communications that are unfortunate and there is a breakdown in communication between the parties. The Court encouraged [the stepmother] and [Defendant] to try to work together for the best interest of the child. It is not in the child's best interest for [the stepmother] and [Defendant] to not be able to work together.

14. Plaintiff has allowed [the stepmother] to assume some of the parenting responsibilities in his household. [The stepmother] should be allowed to fill that role. Defendant's husband . . . has chosen to leave parenting to Defendant. Defendant wants [the stepmother] to assume the same role that [Defendant's husband] has chosen. How each party decides to allocate parenting responsibilities during their custodial periods is up to that party. The step[]parents need to be allowed to fulfill the parenting responsibilities delegated to them by the spouse, and neither the party or the step[]parent should be criticized on how they choose to delegate those responsibilities.

15. [The stepmother] signed the majority of the child's homework assignments. There was nothing inappropriate with [the stepmother] signing the child's homework logs or other documents that came home from the school. The decision on who signs the homework log for each custodial period[] is up to the custodial parent. [The stepmother] may sign

with []Plaintiff or in her individual capacity.

16. Plaintiff has lived in the same house for nine years, has had the same job for eighteen years; Plaintiff has been taking the child to Awana and sports activities; Plaintiff provides more stability for the minor child.

17. Plaintiff is a fit and proper person to have the sole and exclusive care, custody and control of the minor child, and it is in the best interest of the minor child, and will best promote her general welfare, for her sole and exclusive care, custody and control to be awarded to []Plaintiff herein.

18. Defendant is a fit and proper person to exercise reasonable visitation privileges set out below.

In sum, these findings reveal that (1) the child was doing well in school at the time of the hearing under the shared-time custody arrangement; (2) both Plaintiff's and Defendant's current marriages provide one stay-at-home parent who is able to attend most school functions; (3) both Plaintiff and Defendant attend the child's sports activities; (4) Plaintiff and Defendant have been in conflict regarding communication and possession of certain sports-related items; (5) Plaintiff signed the child up for softball without discussing the matter with Defendant; (6) Defendant eats lunch with the child at school several times a week; (7) Defendant believes the stepmother is

overly involved in the child's care, schoolwork, and activities; and (8) Plaintiff provides more stability for the child by living in the same house near extended family and by having the same job for many years.

Much like those found wanting in *Carpenter*, the majority of these findings of fact merely recap the evidence and the parties' contentions without resolving key points of conflict. Only finding of fact 14, wherein the court found that "[h]ow each party decides to allocate parenting responsibilities during their custodial periods [should be] up to that party[,]" and finding of fact 16, in which the court found that Plaintiff provides more stability for the child by living in the same house and having the same job for many years, can be construed as resolving disputed matters.

The court failed to make findings of fact which resolved most of the critical disputes between the parties, including, *inter alia*, who, if anyone, was at fault for communication breakdowns and lack of cooperation; which party, if either, was failing to consistently follow agreed-to rules and other parenting procedures; and whether Defendant's frequent phone calls and emails were excessive and disruptive to Plaintiff's custodial time. Even the court's finding of fact 16 regarding

stability reflects a failure to resolve that issue based upon the evidence presented. Neither party contended that the other's employment or residence was of significant concern in connection with the child's welfare. Rather, both focused on the disruption to the child's well-being caused by each other's different communication styles and lack of cooperation, and the resulting tension and conflict to which the child was exposed.

As in *Carpenter*, "[i]t is difficult to discern the meaning of some of the findings, or at least how the findings relate to the child's welfare." *See id.* at __, 737 S.E.2d at 789. For example, the court found that "[b]oth parties have engaged in some responses to communications that are unfortunate and there is a breakdown in communication between the parties" and further found that Plaintiff signed the child up for softball without consulting Defendant. These findings would appear to suggest that Plaintiff, by acting unilaterally regarding the child's activities, is creating at least some of the communication problems and friction between the parties; yet, the court awarded sole custody to Plaintiff.

In addition to awarding sole physical and legal custody of the child to Plaintiff, the order sets forth a detailed visitation schedule for Defendant which includes a restriction

that she join the child at school for lunch no more than once per week, with the permitted lunches dropping to one every other week the following school year. The order also provides Plaintiff the sole and exclusive right to make all decisions regarding "the physical appearance of the child, including changes to the child's hair, shaving, and piercings" and to possess "[a]ll school awards and projects[.]" Nothing in the court's findings of fact explain such provisions, although we note that the evidence at trial certainly revealed conflict between Plaintiff and Defendant about Defendant's involvement with the child at school and regarding decisions about the child's personal grooming choices.

In sum, the "custody order is fatally defective [because] it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child . . . [and because the existing] findings of fact are too meager to support the award." *Dixon*, 67 N.C. App. at 76-77, 312 S.E.2d at 672 (citations omitted). As was the case in *Carpenter*, we believe that the record contains sufficient evidence on which to base findings of fact and conclusions of law supporting a custody determination. The trial court need not hold a new trial or take additional

evidence, but must (1) determine the primary disputes related to the child's welfare, (2) consider the evidence presented at the custody trial that concerns those disputes, and (3) make findings of fact which resolve any conflicts in that evidence. *See Carpenter*, __ N.C. App. at __, 737 S.E.2d at 785 (noting that the findings of fact in a custody matter must "*resolve the primary issues raised by the evidence* which bear directly upon the child's welfare") (emphasis added).

Accordingly, we remand for entry of additional findings of fact and for entry of such conclusions of law as those findings support.[3]

> Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

---

[3] In light of our resolution of this issue, we need not address Defendant's remaining arguments on appeal.

*Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

REVERSED and REMANDED.

Judge BRYANT concurs.

Judge DILLON dissents by separate opinion.

Report                    per                    Rule                    30(e).

NO. COA13-1195

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

DAVID L. MCGRAW,
    Plaintiff,

v.                                          Johnston County
                                            No. 08 CVD 0985

HOLLY MCGRAW,
    Defendant.


        DILLON, Judge, dissenting.


        Because I believe that the trial court's legal conclusions

are supported by sufficient findings of fact, I respectfully

dissent.

        In this case, the father filed a complaint asking the trial

court to grant him custody of the child.  The mother filed her

answer asking the trial court to grant her custody of the child.

Nothing in the record indicates that either party asked the

trial court to enter a permanent order granting joint custody.

Therefore, the trial court could not consider joint custody as

an option, but rather was required to determine whether it was

in the best interests of the child to award custody to the

father or to the mother.  *See* N.C. Gen. Stat. § 50-13.2(a)

(2013) (providing that "[j]oint custody to the parents shall be

considered upon the request of either parent").

It is not always the case that custody is awarded based on a finding that only one parent would be suitable. Rather, there are situations where either parent might be suitable, but the trial court must exercise its discretion to determine which parent it would be in the best interests of the child to live with. Our Supreme Court has held the following:

> When the court finds that both [parents] are fit and proper persons to have custody of the children involved . . . and then finds that it is to the best interest of the children for [either the father or the mother] to have custody of said children, such holding will be upheld when it is supported by competent evidence.

*Hinkle v. Hinkle*, 266 N.C. 189, 196, 146 S.E.2d 73, 78 (1966); *see also McRoy v. Hodges*, 160 N.C. App. 381, 388, 585 S.E.2d 441, 445 (2003).

In the present case, the trial court ultimately granted custody to the father. The trial court did *not* reach its conclusion based on a determination that the mother would not be a suitable custodian for her child or that she could not provide her with a stable environment. Indeed, the trial court found that the mother was actively engaged in her child's life. Rather, the trial court made its decision based on its determination that living with her father would provide the child with *a more stable environment* than would living with her

mother. I do not believe that the trial court erred by considering stability in determining the best interests of the child in this case.

I believe the trial court made sufficient findings to support its determination that living with the father would provide more stability for the child. First, concerning the fact that each parent had remarried and had new children, the trial court found that the father's new spouse was interested and involved in helping raise the child (along with raising the child's half-siblings), whereas the mother's new spouse had indicated that he had no desire or willingness to be involved with helping raise the child. Second, the trial court made findings to suggest that the father's means for providing for the child were more stable than those of the mother. Specifically, the trial court found that the father had maintained the same job for eighteen years, whereas the mother had held a number of jobs and was currently not in the workforce. Third, the trial court found that the father had stable housing, living in same home in Johnston County where the parties had lived prior to their separation when the child was four years old, whereas the mother had lived away from Johnston County for just over two years with her new husband before

moving back to Johnston County. Fourth, the trial court found that the father's parents – the child's paternal grandparents – live close to the father, indicating some sign of familial stability.[4]

The majority focuses on the trial court's failure to make findings to resolve other "critical disputes" between the parties. I believe the order demonstrates that the trial court did consider other issues raised by the parties, though it based its decision ultimately on which parent could provide a more stable environment for the child. Specifically, the trial court addressed the "communication breakdowns" between the parties, finding that both parties bore some of the blame. The trial court addressed the concern regarding the different parenting styles of the parties, finding that, in this case, such matters should be left to each parent during his or her custodial period. The trial court addressed the mother's concern

---

[4] The majority construes the trial court's findings that it based its determination that the father would provide stability *solely* on the findings that he had stable housing and stable employment, findings which are contained in the same paragraph as its determination that the father provides more stability for the minor child. However, I believe the trial court's determination regarding stability is based not only on the findings contained in that paragraph, but also on the findings contained in the prior paragraphs of the order, as outlined above.

regarding the involvement of the stepmother in raising the child by making findings regarding the nature and extent of her involvement and finding that her involvement was appropriate. The trial court addressed the mother's concern that she had been more involved with caring for a medical condition that the child had experienced, finding that the medical condition had been treated.

In conclusion, I would affirm the order of the trial court granting custody to the father. *See In re White*, 262 N.C. 737, 739, 138 S.E.2d 516, 517 (1964) (holding that in a situation where the evidence might "warrant, but not compel, the court to find that either of the parties was proper and fit, and that the best interest of the child would be served by awarding custody to either[,] the findings made by the court are conclusive").