IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1045

Filed 3 June 2026

Cabarrus County, No. 16CVD001694-120

KARI MARIE RABURN, Plaintiff,

v.

TREVOR JAMES COOK, Defendant.

Appeal by Defendant from order entered 15 May 2025 by Judge Christy E. Wilhelm in Cabarrus County District Court. Heard in the Court of Appeals 22 April 2026.

> *Hartsell & Williams, PA, by Austin "Dutch" Entwistle, III, for Defendant-Appellant.*
>
> *Myers Law Firm, PLLC, by Matthew R. Myers, for Plaintiff-Appellee.*

COLLINS, Judge.

Defendant, Trevor James Cook, appeals from the trial court's order modifying a prior custody order. Defendant essentially argues that the trial court erred by not awarding Plaintiff, Kari Mari Raburn, and Defendant equal physical custody of the parties' three children. For the reasons stated herein, we affirm the trial court's order.

## I. Background

Plaintiff and Defendant are the parents of three minor children. Following

their separation and divorce, the parties entered into a consent judgment and order in December 2016 wherein Plaintiff was awarded legal and primary physical custody of the children, and Defendant was awarded visitation. A consent order modifying child custody was entered in November 2019 ("2019 Order"), awarding the parties joint legal custody, with Plaintiff having primary physical custody and Defendant having secondary physical custody on alternating weekends and during extended summer schedules and holidays. At the time of the 2019 Order, Plaintiff lived in Cabarrus County and Defendant lived in Forsyth County.

In May 2023, Defendant moved to modify the 2019 Order, alleging a substantial change in circumstances based on the children being "older and more mature"; Plaintiff "adopt[ing] an interpretation of the [2019 Order] that prevents Defendant from traveling with the children"; and Defendant being "able and in a much better position to provide more opportunities for the children, including social activities and travel opportunities[.]" Plaintiff responded and filed her own motion to modify, alleging a substantial change in circumstances related to firearms, weapons, and ammunition safety; Defendant's desire to travel to Israel with the children; and medical decision-making.

The parties entered into a temporary memorandum of judgment/order ("MOJ") on 31 January 2024, signed by the trial court, expanding Defendant's physical custodial time and addressing firearm safety and Defendant's travel to Israel with the children. As to custodial time, the MOJ provided: Defendant would have custody

on "[a]lternate Thursday[s] after school until the following Monday morning beginning 2/8/2024"; each party was allowed an additional week of summer vacation with the children; and "[t]he parties shall alternate physical custody of the children in the summer with the [Defendant's] week beginning Friday 5/24/2024 at 5pm and continuing until the following Friday at 5pm. The [Plaintiff's] time will then begin and end the following Friday at 5pm." The matter was to be reviewed in court on 2 June 2024.

A formal Order for Temporary Modification of Custody memorializing and incorporating the MOJ was entered 20 March 2024 ("2024 Temporary Order"). This order found that the parties "agreed that a substantial and material change of circumstances has occurred which now warrants modification of the [2019 Order]" and "waived additional findings of fact to support the entry of" the 2024 Temporary Order. The 2024 Temporary Order essentially recited the terms of the MOJ, including the provisions that the children would continue to reside primarily with Plaintiff, and that Defendant would have physical custody of the children on "alternate weekends from Thursday after school until the following Monday morning beginning February 8, 2024."

However, when memorializing the terms of the parties' alternate weeks of physical custody for the summer of 2024, the 2024 Temporary Order read as follows: "The parties shall alternate weeks of physical custody *beginning* in the summer of 2024" and "the parties shall alternate weeks of physical custody *thereafter*,

exchanging the children each Friday at 5:00 p.m." (emphasis added). The parties began following an alternating-week schedule on Memorial Day of 2024.

On 30 August 2024, Plaintiff's counsel sent Defendant a letter to inform him that "the regular custody schedule, addressed in the *Temporary Memorandum of Judgment/Order* filed January 31, 2024, and the *Order for Temporary Modification of Custody* entered on March 19, 2024, shall resume immediately." The letter explained, "The custodial schedule for the summer, which was alternating weeks, is ONLY to occur during the minor children's summer break. As the minor children's summer break has ended, the regular custodial schedule has and shall resume."

On 12 September 2024, Plaintiff filed a verified motion to revise the 2024 Temporary Order to conform to the MOJ such that the alternating-week schedule was "in the summer" as opposed to "beginning in the summer." Plaintiff averred in her motion, "Defendant now believes that he has the right to joint physical custody of the minor children . . . ."

Plaintiff filed a verified Motion for Emergency/Status Quo Order on 2 October 2024 alleging, in part, "Since the parties' agreement was clearly not set forth in the [2024 Temporary Order] accurately, the parties have no valid agreement and therefore, no factual basis for the [2024 Temporary Order,]" and "Defendant's actions and the inaccurate order have caused a figurative tug-of-war over the children which ultimately causes the children and the Plaintiff unnecessary emotional strain." Plaintiff asked the trial court to award her "emergency, temporary and status quo

physical custody" of the children and to continue "Defendant's custodial visitation every other Thursday through Sunday, as is outlined in the MOJ." The request for emergency custody was denied that day.

Defendant filed a verified motion for contempt and to show cause on 18 October 2024. He alleged, in part: the 2024 Temporary Order "provided that the parties shall alternate weeks of physical custody of the children beginning in the summer of 2024"; "the parties began to exercise custody such that the parties alternated weeks of custody of the children"; Plaintiff informed Defendant at the end of the summer that the parties would go back to the schedule wherein "Defendant would have the children on alternate weekends from Thursday after school until the following Monday morning"; Defendant informed Plaintiff that he would be following the alternating-week schedule; Plaintiff and Defendant would both attempt to pick the children up from school, causing "great confusion and stress to the children, with them not knowing which party they were supposed to be with on any given day"; and the parties followed the alternating-week schedule from beginning of summer 2024 through 14 October 2024. Defendant asked for an order directing Plaintiff to appear and show cause why she should not be adjudged in willful contempt of the court and the 2024 Temporary Order.

Plaintiff filed a Rule 60 motion asking the court to set aside the 2024 Temporary Order because the addition of the word "beginning" to the 2024 Temporary Order "creates a substantive change to what the parties agreed upon" in

the MOJ and "[t]he parties did not sign" the formal 2024 Temporary Order "or in any other way authorize this substantive change." Plaintiff voluntarily dismissed her motion to modify custody on 11 December 2024.

A hearing on custody and contempt took place on 12 December 2024. By order entered 15 May 2025 ("2025 Order"), the trial court modified custody as set forth in the 2019 Order and ordered a parenting coordinator assigned to the case. The trial court found that a substantial change in circumstances had occurred since the 2019 Order:

> 12. Since the entry of the November 27, 2019 Consent Order Modifying Custody, there has been a substantial change of circumstances affecting the minor children. More specifically:
>
> > a. Plaintiff ceased allowing extra parenting time on weekdays during the summer to allow Defendant to exercise vacations with the minor children and has objected to Defendant's choice to vacation with the children in Israel.
> >
> > b. The minor children are older, more mature, and have evolved different interests when spending parenting time with Plaintiff as opposed to Defendant. At the entry of the previous Order, the youngest child was not in school and now all three children are enrolled in school and engage in a number of activities, including sports, religious activities, and extracurricular activities, as well as school.
> >
> > c. Defendant's work schedule is flexible enough to allow him to work from home and therefore be available to transport the minor children and spend parenting time with them during the week.
> >
> > d. Defendant has moved from Kernersville to

- 6 -

Cabarrus County so that he can exercise more parenting time with the minor children and be more involved in their extracurricular and other activities.

The trial court made the following findings of fact relevant to its conclusion that the terms outlined in the 2025 Order were in the best interests of the children:

13. Although Defendant is physically closer to the children now and has expressed an interest in doing so, Plaintiff primarily remains more active in managing the minor children's daily activities, such as extracurricular sports, youth group, and school responsibilities as well as scheduling the children's medical and dental appointments. Both parents communicate with the minor children's teachers and other third parties.

14. The minor children's ability to participate in sports and other activities has been frustrated by the parties' inability to communicate clearly and work together for the wellbeing of the minor children.

15. Each of the minor children have been doing well in school but would benefit from a routine standard schedule during the school year to help with their emotional and educational stability.

16. The parties have difficulty communicating with one another effectively about the wellbeing of the minor children and frequently argue about extracurricular activities, routine medical care, and education issues. The parties sharply disagree regarding the terms of the Memorandum of Judgment entered January 2024 and the resulting March 20, 2024 Order for Temporary Modification of Custody, as well as the effects of any potential change in the children's schedule.

17. This is a high conflict case. The appointment of a parenting coordinator is in the best interests of the minor children. The parties have the ability to pay for the cost of a parenting coordinator.

18. Neither party objects to the holiday schedule as it was

        included in the November 27, 2019 Consent Order
Modifying Custody, but the parties do not agree on an
appropriate schedule during the school year or summer.

19. The terms of this Order are in the present best interests
of the minor children.

Based on its findings, the court concluded that Plaintiff and Defendant shall continue to share joint legal custody, Plaintiff shall have primary physical custody, and Defendant shall have secondary physical custody. During the school year, Defendant shall have physical custody of the children from 4:00 p.m. on Friday until Sunday evening at 6:30 p.m., every other weekend. During the summer vacation from school, Plaintiff and Defendant shall share "week on/week off visitation, alternating every 7 days on Sundays at 6:30 p.m. This schedule shall begin the Sunday after school has recessed for summer vacation and shall end the Sunday before school resumes for the following school year. This schedule shall be implemented such that the rotation allows the minor children to be with [Plaintiff] for the last week of the summer, so as to allow them to prepare for the upcoming school year." Defendant timely appealed.

## II.  Discussion

Defendant essentially argues that the trial court erred by not awarding Plaintiff and Defendant equal physical custody.

## A. Standard of Review

A party seeking modification of an existing custody order must show that "a substantial change of circumstances affect[ing] the welfare of the child" warrants a

change in custody and that modification is in the child's best interests. *Shipman v. Shipman*, 357 N.C. 471, 474 (2003) (citation omitted). On appeal, this Court examines whether the trial court's findings of fact are supported by substantial evidence and whether those findings support the conclusions of law. *Id.* at 474-75. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pulliam v. Smith*, 348 N.C. 616, 625 (1998) (cleaned up). If the findings are supported by substantial evidence, they are binding on appeal, even if the record could support contrary findings. *Shipman*, 357 N.C. at 475.

"[T]he trial court is vested with broad discretion in cases involving child custody." *Pulliam*, 348 N.C. at 624 (citation omitted). Where a trial court concludes that a substantial change in circumstances has occurred and that modification of custody was in the best interest of the child, we review the trial court's ultimate custody determination for abuse of discretion and will not overturn it unless "manifestly unsupported by reason[.]" *Stephens v. Stephens*, 213 N.C. App. 495, 503 (2011) (citation omitted).

## B. Challenged Findings of Fact

Defendant argues that finding of fact 13 is not supported by the record "to the extent this Court reads finding of fact 13 to be critical of him." Finding of fact 13 states:

> Although Defendant is physically closer to the children

> now and has expressed an interest in doing so, Plaintiff primarily remains more active in managing the minor children's daily activities, such as extracurricular sports, youth group, and school responsibilities as well as scheduling the children's medical and dental appointments. Both parents communicate with the minor children's teachers and other third parties.

There is substantial record evidence to support that Plaintiff continued to be the primary parent who managed the children's daily activities and responsibilities. Testimonial evidence shows Plaintiff was responsible for scheduling and attending the majority of the children's medical and dental appointments, and Plaintiff coordinated their extracurricular activities, such as cheer, tumbling, baseball, soccer, band, and a robotics program, and purchased the gear needed for those activities.

Defendant testified he scheduled some dental appointments for the children but asked Plaintiff if she was available to take the children to the dental appointments. Defendant also scheduled an eye appointment for one of the children, but the eye appointment conflicted with the child's therapy sessions, which caused the child to miss their therapy appointment. While the record evidence shows that Defendant attended some of the children's extracurricular activities, it also shows that Plaintiff primarily purchased the gear for and facilitated the children's participation in their extracurricular activities. Defendant's testimony shows that, after moving to be closer to the children, he was able to see the children more often and attend some of their activities, but that Plaintiff was primarily more active in the children's day-to-day schooling, recreational and summer activities, and medical

appointments. Finding of fact 13 is supported by substantial evidence.

Defendant also challenges finding of fact 19 which states, "The terms of this Order are in the present best interests of the minor children." "The determination of what 'will best promote the interest and welfare of the child,' that is, 'what is in the best interest of the child,' is a conclusion of law[.]" *Hunt v. Hunt*, 112 N.C. App. 722, 728 (1993) (citation omitted). We therefore treat finding 19 as a conclusion of law and review it as such below.

All other findings, including Findings 12 and 14-16, are unchallenged and thus binding on appeal. *See Peters v. Pennington*, 210 N.C. App. 1, 13 (2011).

## C. Best Interests

Defendant's primary contention is that the trial court "made no Findings about an effect on the children, or conduct by either parent, warranting a deviation from the 50-50 summer schedule otherwise entered here." He argues that the court's findings "syllogistically lead to the conclusion" that equal physical custody year-round is in the children's best interests and that the court erred by not ordering equal physical custody during the school year. We disagree.

Under N.C. Gen. Stat. § 50-13.2(a), "the trial court is required to order custody of minor children to the person that will best promote the interest and welfare of the child. The statute also mandates that the trial court consider all relevant factors and making findings accordingly." *Hall v. Hall*, 188 N.C. App. 527, 530 (2008) (cleaned up); N.C. Gen. Stat. § 50-13.2(a) (2025). "The trial court need not make a finding as

to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute." *Hall*, 188 N.C. App. at 530 (cleaned up).

"This Court has recognized that the trial judge is in the best position to make such a determination as he or she can detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Id.* "Accordingly, the trial judge is vested with broad discretion in custody cases and will not be overturned absent an abuse of discretion." *Id.* "When the trial court finds that both parties are fit and proper to have custody, but determines that it is in the best interest of the child for one parent to have primary physical custody . . . , such determination will be upheld if it is supported by competent evidence." *Id.* (citation omitted).

The trial court found that Defendant now lives closer to the children and has a flexible work schedule which allows him to transport them and be more involved. Yet, Plaintiff "primarily remains more active in managing the minor children's daily activities, such as extracurricular sports, youth group, and school responsibilities as well as scheduling the children's medical and dental appointments." The parties' inability to communicate clearly and work together has "frustrated" the children's ability to participate in sports and other activities. Furthermore, the children "have been doing well in school but would benefit from a routine standard schedule during the school year to help with their emotional and educational stability."

These findings directly address the children's welfare and their lives during

the school year. They show that Plaintiff has historically been, and remains, the parent primarily responsible for managing school, activities, and appointments; the parties' communication difficulties have negatively affected the children's participation in activities; and the children would benefit from a "routine standard schedule" during the school year.

From these findings, the trial court could reasonably conclude that a structured school-year schedule with Plaintiff as primary physical custodian, and Defendant exercising alternating-weekend custody, best promotes the children's emotional and educational stability. *See id.* at 533 (upholding primary physical custody with one parent where both were fit but evidence supported that arrangement was in the child's best interests).

Defendant emphasizes that the court made no findings he is unfit or his increased involvement has harmed the children. But the statute does not require a finding of unfitness to award primary physical custody to one fit parent. *See* N.C. Gen. Stat. § 50-13.5(i) (2025) (requiring unfitness finding only before denying "reasonable visitation"); *Hall*, 188 N.C. App. at 530. Defendant was not denied reasonable visitation; he was awarded alternating-weekend custody during the school year and equal custody during the summer. The absence of a finding of unfitness does not compel equal physical custody. *See id.*

Nor is the trial court required to adopt the particular modification preferred by the moving party once a substantial change is found. The showing of changed

circumstances must be, or be likely to be, impactful on the child, *Pulliam*, 348 N.C. at 620, and the trial court's findings must "directly link the substantial change of circumstances and their effect on the minor child," *Henderson v. Wittig*, 278 N.C. App. 178, 182 (2021) (citations omitted).

Here, the trial court linked Defendant's relocation and increased availability, the children's age and maturity, and the parties' communication difficulties to the children's school performance, participation in activities, and need for a stable school-year routine. The trial court's conclusion that the best interests of the children were served by a structured school-year schedule with Plaintiff as primary physical custodian, rather than equal custody year-round, is a discretionary judgment supported by the findings.

Defendant also argues that Findings 14 and 15 "implicate both parents equally" and therefore cannot justify awarding Plaintiff more time. But the fact that both parents share responsibility for communication difficulties does not preclude the court from determining which custodial arrangement best mitigates their impact on the children. The court reasonably concluded that maintaining Plaintiff as the primary physical custodian during the school year, consistent with the long-standing pattern under the 2019 Order, would provide the "routine standard schedule" the children need, while still expanding Defendant's time in the summer to reflect his changed circumstances.

In summary, the trial court's ultimate custody determination is not "manifestly

unsupported by reason," *Stephens*, 213 N.C. App. at 503 (citation omitted), and the trial court thus did not abuse its discretion by determining that its custody determination was in the best interests of the children.

## D. Decretal Paragraph 5

Defendant challenges decretal paragraph 5, which addresses the summer schedule and provides, in part, that the children will be with Plaintiff "for the last week of the summer" immediately preceding the start of school. Defendant contends this sentence was "mistakenly included" and is inconsistent with the findings.

The 2019 Order, entered by consent, contained a nearly identical provision: Plaintiff was to select three summer weekends, "with one of Plaintiff's weekends being the final weekend of the summer." The 2025 Order modified the summer schedule to alternating weeks of physical custody but did not modify the provision that the children would be with Plaintiff immediately before school resumed.

Given the trial court's unchallenged finding that the children "would benefit from a routine standard schedule during the school year to help with their emotional and educational stability[,]" and its finding that Plaintiff primarily manages school responsibilities, the decision to have the children with Plaintiff on the week immediately preceding the school year is an exercise of discretion that is not "manifestly unsupported by reason[.]" *Id.* (citation omitted).

## III.   Conclusion

For the reasons stated herein, the trial court's order is affirmed.

AFFIRMED.

Judges TYSON and GORE concur.