IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-172

Filed 2 April 2025

Mecklenburg County, No. 23CVD601627

MADIGAN SHOMETTE o/b/o T.N.,[1] Plaintiff,

v.

MICHAEL NEEDHAM, Defendant.

Appeal by plaintiff from order entered 18 August 2023 by Judge Jena P. Culler in District Court, Mecklenburg County. Heard in the Court of Appeals 5 November 2024.

*Rech Law, P.C., by Kate A. Rech, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals from a trial court order denying her Complaint and Motion for Domestic Violence Protective Order ("DVPO"). Because the trial court's finding of fact was supported by competent evidence, and the finding of fact supports the trial court's conclusion of law, we affirm the trial court's order.

## I. Background

Plaintiff ("Wife") and Defendant ("Husband") were married on 14 November

---

[1] A pseudonym is used to protect the identity of the minor child. *See* N.C. R. App. P. 42.

2022. The parties have a minor child together, T.N., born August 2021, who Wife alleged in her Complaint and Motion for DVPO "was a product of [Husband] raping [her] during the parties' marriage." The parties separated on 3 April 2023.

On 28 April 2023, Wife filed a Complaint and Motion for DVPO ("28 April 2023 Complaint and Motion for DVPO") in District Court, Mecklenburg County, file number 23-CVD-601007.[2] That same day, a magistrate judge denied Wife's request for an *Ex Parte* DVPO. On 1 May 2023, the trial court also denied Mother's request for an *Ex Parte* DVPO. The trial court found in its May 2023 order denying issuance of the *Ex Parte* DVPO that

> [t]he parties are separated but [Husband] visited the home to see their son. He wanted to see [Wife] and got upset when he couldn't. He told her he'd be moving back in on Sunday. She saw on the [security] camera that he did return to the home on Sunday and tried to get in the house . . . but was unsuccessful. Insufficient evidence of acts of DV. This seems more a dispute of access to the home.

Having been unsuccessful in obtaining an *Ex Parte* DVPO, Wife did not proceed to a contested hearing for the trial court to determine whether to grant a DVPO. Instead, on 15 May 2023, Wife filed a Notice of Voluntary Dismissal of the 28 April 2023 Complaint and Motion for DVPO.

On 2 June 2023, Husband filed a complaint against Wife in Mecklenburg

---

[2] Wife made allegations of rape and attempted rape in the 28 April 2023 Complaint and Motion for DVPO, alleging specific dates, starting on 18 November 2020 and up to 19 March 2023, albeit in less detail than in her second Complaint and Motion for DVPO, which she filed 6 July 2023.

County seeking child custody, child support, physical and mental health examination of Wife, a motion for parenting capacity evaluation of Wife, equitable distribution, and attorney's fees. He alleged that

> [Wife] has routinely accused [him] of committing acts of rape against her throughout the marriage. Further, [Wife] would often corner [Husband] demanding that he admit to "what he had done." Upon information and belief, [Wife] would often record portions of these conversations between [Wife] and [Husband], when [she] was cornering [him].

He also included allegations regarding the 28 April 2023 Complaint and Motion for DVPO Wife had filed.

On 12 June 2023, Wife filed a Verified Complaint with claims for "Assault, Battery, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, False Imprisonment, and Punitive Damages" (capitalization altered), against Husband in Superior Court, Mecklenburg County ("Superior Court Complaint"). On or about 27 June 2023, Wife brought criminal charges against Husband and he was arrested and released.

On 6 July 2023, Wife filed another Complaint and Motion for Domestic Violence Protective Order ("6 July 2023 Complaint and Motion for DVPO") against Husband. She sought a DVPO for herself and on behalf of the parties' minor child, T.N. The 6 July 2023 Complaint and Motion for DVPO was filed on a form complaint, AOC-CV-303, Rev. 3.22, but she attached to this form her Superior Court Complaint and documents related to the criminal charges described above. According to Wife's

6 July 2023 Complaint and Motion for DVPO,[3] she was a virgin when the parties married, and the first time she had sex was on 18 November 2020, "while [Wife] and [Husband] were on their honeymoon." She alleged that "[Husband] initiated sex with [Wife]. [Wife] informed [Husband] that she was on her period and did not want to have sex on her period." She alleged Husband insisted on trying, but it was very painful and she asked him to stop, but he did not stop. Wife's 6 July 2023 Complaint and Motion for DVPO then alleges several other very detailed instances of occasions when Husband either had sex with her or tried to have sex with her. Ultimately, she alleges that she believed "that [Husband] sexually assaulted and raped her approximately 50-100 times during their marriage."

That same day, a trial court entered an *Ex Parte* DVPO based on findings that "[Husband] raped [Wife] numerous times throughout the marriage while she was holding and nursing the minor child. On 3/19[/2023], [Husband] attempted to rape [Wife] and she had to force him off of her physically." The trial court also found "[Husband] was arrested and after being released he text [sic] [Wife] 6 times in violation of his bond condition."

The trial court held a hearing on the 6 July 2023 Complaint and Motion for DVPO on 16 August 2023. Wife testified that "throughout [their] marriage" Husband "raped" her "between 50 and 100 times[.]" As in her Superior Court Complaint, Wife

---

[3] The attachments describe numerous sexual acts in extreme graphic detail and we will describe Wife's allegations generally for purposes of this opinion.

described in graphic detail many times when Husband had sex with her or tried to have sex with her and she did not want to and repeatedly told him "no[.]" Wife testified that she had initiated criminal proceedings for "secondary forcible rape" against Husband in Mecklenburg County, North Carolina, and that other "criminal investigations" were proceeding in both Mecklenburg County and in Pigeon Forge, Tennessee.

Husband also testified. He agreed that the first time the parties had sex was on their honeymoon, but he claimed they had sex many times during the two-week honeymoon and he was not aware of "anything abnormal during the honeymoon that upset her[.]" Husband testified that the first time Wife had used the word "rape" regarding him was on the "date of separation, [3 April 2023]." He did not "learn any of the specifics" about her claims about rape until he "saw the . . . first ex parte order."[4] Just before their separation, Wife had told him "she had felt used during sex." He also testified about moving out of the house, his attempts to visit with the minor child, and his arrest, which caused him to lose his job. He denied that he had ever raped Wife or "physically held her down."

In an order entered 16 August 2023, and in an amended order entered 18 August 2023, the trial court denied Wife's 6 July 2023 Complaint and Motion for DVPO as to her and the parties' minor child, and rendered the 6 July 2023 *Ex Parte*

---

[4] It appears Husband was referring to the 28 July 2023 Complaint and Motion for DVPO, as there was no *ex parte* order issued based on the 28 July 2023 Complaint and Motion for DVPO.

DVPO "null and void." The trial court concluded Wife "failed to prove grounds for issuance of a [DVPO]." Wife timely appealed the trial court's order denying her 6 July 2023 Complaint and Motion for DVPO on 30 August 2023.

## II. Analysis

Wife makes two arguments on appeal. First, Wife argues the trial court's Finding of Fact No. 8 was not supported by competent evidence and that this finding could not serve as sufficient grounds to support its conclusion Wife "failed to prove grounds for issuance of a [DVPO]." Next, Wife argues the trial court "erred by failing to find and conclude that an act of domestic violence occurred in accordance with [North Carolina General Statute Section] 50B-1(a) and, therefore, erred by failing to enter a [DVPO] in favor of [Wife]." We disagree and affirm the trial court's order.

## A. Standard of Review

> When the trial court sits without a jury regarding a DVPO, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal.

*Hensey v. Hennessy*, 201 N.C. App 56, 59, 685 S.E.2d 541, 544 (2009) (citation, quotation marks, and brackets omitted).

> Findings of fact supported by competent evidence are conclusive on appeal even if there is evidence to the contrary. This is because
>
> > where different reasonable inferences can be drawn

> from the evidence, the determination of which reasonable inferences shall be drawn is for the trial court. This Court can only read the record and, of course, the written word must stand on its own. But the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words.

*Moorhead v. Moorhead*, ___ N.C. App. ___, ___, 909 S.E.2d 327, 330 (2024) (citations and quotation marks omitted). Whether an act of domestic violence has occurred is a conclusion of law, *see Kennedy v. Morgan*, 221 N.C. App. 219, 223, 726 S.E.2d 193, 196 (2012), and this Court reviews conclusions of law *de novo, see State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008).

## B. Sufficiency of Findings

Wife argues the trial court's Finding of Fact No. 8 was not supported by competent evidence and that this finding "merely recited the evidence" and does not serve as an "ultimate finding[ ] of fact." Wife contends recitations of testimony cannot serve as the sole basis of the trial court's findings to support its conclusions. We affirm the trial court's order as this contested finding goes beyond mere recitations of testimony.

Here, the trial court's Finding of Fact No. 8 reads:

> [Wife] contends that [Husband] "raped" her 50 to 100 times during their 2 and a half year marriage. She described several occasions when she says she said no and he didn't stop. [Husband] denies ever continuing to have sex with

> [Wife] when she told him to stop or pushed him off except when she was saying so while laughing or in a playful manner. The statutes regarding sexual offenses that are applicable require evidence of by [sic] force and against the will of the victim. The evidence of "against her will" is her saying she said no and him contradicting that evidence saying he never proceeded past a non-playful laughing no similar to when they were play wrestling. There is almost no evidence from which the court could find any alleged action was by force. The court considering all of the evidence and weighing the credibility of each witness cannot find by the greater weight of the evidence that [Husband] committed an act of domestic violence.

"There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951) (citations omitted). "Pursuant to Rule 52(a) [of our North Carolina Rules of Civil Procedure], the trial court's findings of fact must be more than mere evidentiary facts; they must be the specific ultimate facts sufficient for an appellate court to determine that the judgment is adequately supported by competent evidence." *Williamson v. Williamson*, 140 N.C. App. 362, 363-64, 536 S.E.2d 337, 338 (2000) (citation, quotation marks, ellipsis, and original brackets omitted).

In *In re Green*, this court explained in a footnote "verbatim recitations of the testimony . . . *do not* constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." 67 N.C. App. 501, 505, n. 1, 313

S.E.2d 193, 195, n.1 (1984) (emphasis in original). Where the trial court fails to make adequate and sufficient findings to support its conclusions, this Court must vacate the order and remand for further proceedings. *See id.* ("The purported 'findings' . . . do not even come close to resolving the disputed factual contentions of the parties, and, under ordinary circumstances would require this Court to remand the matter to the [d]istrict [c]ourt for the entry of appropriately considered and detailed factual findings."); *see also Crosby v. Crosby*, 272 N.C. 235, 238-39, 158 S.E.2d 77, 80 (1967) ("However, when the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence . . . , then the order entered thereon must be vacated and the case remanded for detailed findings of fact." (citation omitted)).

However, as further explained by our Supreme Court in *In re A.E.*, "recitations of . . . testimony . . . do not constitute findings of fact . . . *absent an indication concerning whether the trial court deemed the relevant portion of the testimony credible.*" 379 N.C. 177, 185, 864 S.E.2d 487, 495 (2021) (emphasis added) (citations, quotation marks, brackets, and original emphasis omitted). "There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes." *In re T.N.H.*, 372 N.C. 403, 408, 831 S.E.2d 54, 59 (2019) (citations and quotation marks omitted).

> Where the evidence is conflicting . . . , the [trial] judge must resolve the conflict. He sees the witnesses, observes their demeanor as they testify and by reason of his more

favorable position, he is given the responsibility of discovering the truth. The trial court must determine the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, the trial court determines which inferences to draw and which to reject. Only the trial court can draw these inferences or any other potential inferences based on the evidence. This Court does not resolve issues of credibility or conflicting evidence.

*Carolina Mulching Co. LLC v. Raleigh-Wilmington Investors II, LLC*, 272 N.C. App. 240, 246, 846 S.E.2d 540, 544-45 (2020) (citations, quotation marks, and original brackets omitted). "The findings should resolve the material disputed issues, or if the trial court does not find that there was sufficient credible evidence to resolve an issue, should so state." *Carpenter v. Carpenter*, 225 N.C. App. 269, 279, 737 S.E.2d 783, 790 (2013) (citation omitted).

In *Williamson*, this Court reversed and remanded a trial court order where the findings were not "ultimate facts required by Rule 52(a), . . . but rather . . . mere recitations of the evidence . . . not reflect[ing] the processes of logical reasoning[.]" *Williamson*, 140 N.C. App. at 364, 536 S.E.2d at 339 (citations and quotation marks omitted). "This is indicated by the trial court's repeated statements that a witness 'testified' to certain facts or other words of similar import." *Id.* For instance, the trial court's findings in *Williamson* had language such as "from [the defendant's] *testimony*" and "[the p]laintiff *testified*[,]" to then only outline what these witnesses testified to. *See id.* (emphasis in original). Such "findings are mere recitations of the evidence and are not the ultimate facts required to support the trial court's

- 10 -

conclusions of law[.]" *Id.* Further, in *In re Green*, this Court identified via a footnote that "[e]leven out of the twelve '[f]indings of [f]act' begin by stating that the witness 'testified under oath', and continue to merely restate the content of that testimony." 67 N.C. App. at 505, n. 1, 313 S.E.2d at 195, n.1 (ellipses omitted).

At the trial court hearing, Wife testified to allegedly being "raped . . . 50 to 100 times[ ]" by Husband throughout the course of their marriage. However, when asked whether "[d]uring sex, had [Wife] ever pushed you off her and told you to stop?" Husband responded "[s]he had done that, in a playful way, though. Never – it never sounded serious. It was always while she was laughing." Further, during cross-examination, Wife was presented with text messages sent between her and Husband on 8 August 2022, and the following interaction occurred:

> Q. Okay. And what's the date on that text?
>
> A. That is August 8th, 2022.
>
> Q. Is it fair to say that you were talking about you ovulating and for him to come home and hurry up?
>
> A. Yes.
>
> Q. Okay. So this is August 8th, 2022 and I think you said you were -- you were -- you were married on November 14th of 2020. So this is close to, you know, a year and a half later. How many times would you say he has allegedly raped you in August -- by August 8th, 2022?
>
> A. In August -- I can't give a specific number, no.
>
> Q. Okay. Just -- you said 50 to 100 times, so would it be fair to say maybe half; 25 times, at minimum?

A. At minimum.

Q. At minimum 25 times. And that's -- and that's the one you want to have a kid, a child, with?

A. I still loved [Husband].

Additionally, Wife was presented with a post she made on 22 July 2023, after filing her 6 July 2023 Complaint and Motion for DVPO, to a local group dedicated to moms in her area, indicating she "definitely want[ed] to get pregnant sometime soon."

Wife specifically testified about an instance of alleged rape on 10 March 2022 during a road trip with Husband, their child, and Wife's sister. Wife testified her sister was asleep when Husband took her into the bathroom and tried to "rape" her. When asked on cross-examination whether she ever called out for help during this event, she answered "[n]o. I was telling [Husband] I didn't want to have sex."

Here, Finding of Fact No. 8 first correctly characterizes the conflicting testimony presented by Wife and Husband. But after this, the trial court clearly addresses the weight and credibility of the evidence, stating that after "considering all of the evidence and weighing the credibility of each witness cannot find by the greater weight of the evidence that [Husband] committed an act of domestic violence." Though this finding uses language such as "[Wife] contends[,]" "[Wife] described[,]" and "[Husband] denies[,]" this finding goes beyond "mere recitation[ ] of . . . evidence" as described by this Court in *Williamson* and *In re Green*. *See Williamson*, 140 N.C. App. at 364, 536 S.E.2d at 339; *see also In re Green*, 67 N.C. App. at 505, n. 1, 313

S.E.2d at 195, n.1. The trial court weighed testimony of the parties and determined the credibility of the evidence, ultimately determining it could not "find by the greater weight of the evidence that [Husband] committed an act of domestic violence." This finding also indicates "[t]here is almost no evidence from which the court could find any alleged action was by force." This part of the finding is also correct. Wife testified about not wanting to have sex for various reasons and about telling Husband "no" but then they ended up having sex after she told him "no." Wife testified that "[i]f I say no, I do consider that rape."

When the trial court rendered its ruling at the hearing, it noted the careful consideration of the testimony of each party and the

> sex offenses list of statutes that are in the domestic violence statute. I have looked at each of those. And each of those requires a finding of force -- by force. There is basically a he said/she said situation about whether or not he continued past her saying no. He says that . . . he never did . . . if it was a serious no. He referenced playful no's or pushing off, similar to when they are play wrestling. [Wife] defined rape as when she says no, it means no. I don't disagree that when with regard to sexual intercourse, that no means no. But I have to follow the law and the law in our statutes say "by force and against the will."

Finding of Fact No. 8 was supported by competent evidence, and it is an ultimate finding of fact which resolves the disputed issue.

## C. Act of Domestic Violence

Next, Wife argues the trial court erred in not finding and concluding that an act of domestic violence occurred under North Carolina General Statute Section 50B-

1(a), and further erred in not granting Wife's 6 July 2023 Complaint and Motion for DVPO in accord with such findings. Wife contends, even if the trial court's finding is an ultimate finding of fact, it is still in error as the trial court should have concluded that an act of domestic violence occurred. We disagree.

We first note that the trial court made one conclusion of law in the DVPO on appeal: "[Wife] has failed to prove grounds for issuance of a domestic violence protective order." Wife does not directly challenge this conclusion of law in her appellate brief. Instead, she argues that the trial court should have instead made a different conclusion of law. We will treat this argument as a challenge to the trial court's conclusion of law since she has made this argument, however inartfully.

Under Section 50B-1(a) of our General Statutes,

> [d]omestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
>> (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
>>
>> (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
>>
>> (3) Committing any act defined in G.S. 14-27.21 through G.S. 14-27.33. [i.e., sex offenses]

N.C. Gen. Stat. § 50B-1(a) (2023).

Wife argues that she "specifically alleged all three subsections of [North Carolina General Statutes Section] 50B-1(a) in her [6 July 2023 Complaint and Motion for DVPO] for the trial court to have considered and presented evidence on each of the three[ ]" subsections, not just subsection (3). It is true that Wife checked all the boxes on the 6 July 2023 Complaint and Motion for DVPO, for each subsection of the statute. In the blank where the form directs to "[g]ive specific dates and describe in detail what happened," Wife stated, "[p]lease see attached, which is incorporated by reference as though set forth fully herein." Wife also included an attachment referencing paragraphs 4, 5, and 8 of the 6 July 2023 Complaint and Motion for DVPO. Paragraphs (a) through (d) are general allegations about the parties' residences, date of marriage, date of separation, their minor child, and Wife's pregnancy with their second child. Then Wife makes detailed allegations of sexual assault or rape and incorporates the Superior Court Complaint and criminal papers noted above.

Wife argues in detail about how the trial court could have made findings that would support a conclusion that an act of domestic violence occurred under any three subsections of Section 50B-1(a), not just subsection (3), and argues the trial court erred in not doing so. Further, Wife contends the trial court only considered the occurrence of an act of domestic violence in the scope of "by force" and "against the will of the victim" under the sexual offenses identified by subsection 50B-1(a)(3) of

the statute. Thus, Wife argues the trial court erred in not considering the other subsections of 50B-1(a), i.e., (a)(1) and (a)(2), in finding whether an act of domestic violence occurred.

Wife's argument focuses on her testimony about various instances of sex with Husband and her contention that he was raping her or sexually assaulting her. She contends the trial court should have found that Husband "attempted to cause bodily injury[ ] or intentionally caused bodily injury" to her based upon this testimony. It is true, as Wife argues, that a forced sexual act *may* cause "bodily injury," but Wife neither alleged such injury nor presented evidence of this type of injury. Her 6 July 2023 Complaint and Motion for DVPO and her testimony focused almost entirely and in exceptionally graphic detail on acts she deemed sexual assaults or rape or attempts of sexual assault or rape.

But no matter what findings the trial court could have made based on the evidence presented, we have already determined that the trial court's finding of fact was supported by competent evidence. This Court is not free to substitute its judgment for the trial court or to make new findings of fact. The trial court carefully considered the evidence and made determinations as to the weight and credibility of the evidence. The trial court's findings of fact do not support a conclusion of law that an act of domestic violence occurred under any subsection of Section 50B-1(a). Therefore, the trial court did not err by concluding that "[Wife] has failed to prove grounds for issuance of a [DVPO]."

### III.    Conclusion

The trial court's finding of fact was based on competent evidence and is an ultimate finding of fact, not a "mere recitation" of testimony, as it answers the material issue of whether Husband had committed any act of domestic violence as alleged by Wife.  The trial court's conclusion of law was supported by the finding of fact.  The trial court did not err in denying Wife's 6 July 2023 Complaint and Motion for DVPO.

AFFIRMED.

Judges ZACHARY and CARPENTER concur.