JASON DONALD CARPENTER, Plaintiff
v.
JESSICA DELORES CARPENTER, Defendant

No. COA12-820

Filed 5 February 2013

**Child Custody and Support—primary custody—best interests of child—insufficient findings of fact**

The trial court erred in a child custody case by failing to make sufficient findings of fact to support its conclusion that awarding primary custody of the minor child to defendant mother was in the minor child's best interest. The case was reversed and remanded to the trial court for additional findings of fact, as well as conclusions of law and decretal provisions based upon those findings.

Appeal by plaintiff from orders entered 6 January 2012 and 23 January 2012 by Judge C. Thomas Edwards in District Court, Catawba County. Heard in the Court of Appeals 10 January 2013.

*Crowe & Davis, P.A. by H. Kent Crowe, for plaintiff-appellant.*

*LeCroy Law Firm, PLLC by M. Alan LeCroy, for defendant-appellee.*

STROUD, Judge.

Jason Donald Carpenter ("plaintiff") appeals from the permanent custody order entered 6 January 2012 awarding Jessica Carpenter ("defendant") primary custody of their minor child, George,[1] and the trial court's order entered 23 January 2012, correcting various scrivener's errors in the initial order. The 23 January order was identical to the 6 January order other than the corrected scrivener's errors.

## I. Procedural History

Plaintiff filed a complaint for child custody, child support, and divorce from bed and board in District Court, Catawba County on 12 May 2010. Defendant answered and filed counter-claims for the same causes of action, as well as post-separation support, alimony, and equitable distribution. After the parties failed to resolve the custody

---

1. To protect the identity of the juvenile and for ease of reading we will refer to him by pseudonym.

claims in mediation, the trial court held the custody hearing on 25 and 26 October 2011, completed the hearing on 7 and 9 November 2011, and announced the ruling on 10 November 2011. By order entered 6 January 2012, the trial court granted primary custody to defendant and secondary custody to plaintiff on a set schedule.

Plaintiff filed notice of appeal to this Court on 2 February 2012. The trial court entered an "Amended Child Custody and Child Support Order" on 23 January 2012, which makes minor and non-substantive changes to the 6 January 2012 order. As there was no motion to amend the order, it appears that the trial court amended the order *ex mero motu*. The Plaintiff filed another notice of appeal on 27 February 2012, noting appeal to both the original and amended orders. Despite the plaintiff's first notice of appeal, the trial court had jurisdiction to enter the Amended Order under N.C. Gen. Stat. § 1A-1, Rule 60(a)[2]. We will therefore consider plaintiff's appeal based upon the 23 January 2012 amended order.

## II. Custody Order

Plaintiff argues that the trial court failed to make sufficient findings of fact to support its conclusion that awarding primary custody of George to defendant was in the minor child's best interest. We agree.

> In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact. . . . Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal.

*Peters v. Pennington*, ___ N.C. App. ___, ___, 707 S.E.2d 724, 733 (2011) (citations and quotation marks omitted). Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo. Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008).

---

2. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate division, and thereafter while the appeal is pending may be so corrected with leave of the appellate division." N.C. Gen. Stat. § 1A-1, Rule 60(a).

> Findings of fact regarding the competing parties must be made to support the necessary legal conclusions. These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child. However, the trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute.

*Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990) (citations and quotation marks omitted), *aff'd*, 328 N.C. 324, 401 S.E.2d 362 (1991).

Plaintiff does not challenge any of the trial court's findings of fact, so they are binding on appeal. *Peters*, ___ N.C. App. at ___, 707 S.E.2d at 733. Plaintiff's only argument on appeal is that the trial court made insufficient findings to support its conclusions of law. Plaintiff argues that the trial court failed to resolve the "questions raised by the evidence," and that "[w]here the trial court appears to implicitly resolve issues raised by the testimony of the parties, but the resolution of those issues is not reflected in the findings of fact, the appellate court has no basis upon which to determine how the trial court reached its decision."

Defendant's brief gives short shrift to Plaintiff's contentions, taking only 3 pages to present her argument that the trial court's findings are adequate to support the conclusions of law, relying entirely upon *Hall v. Hall*. Quoting *Hall*, 188 N.C. App. at 530, 655 S.E.2d at 904, defendant notes that "where the trial court 'finds that both parties are fit and proper to have custody, but determines that it is in the best interest of the child for one parent to have primary physical custody, as it did here, such determination will be upheld if it is supported by competent evidence.'" Although this statement of the law is correct, Defendant's reliance on *Hall* is misplaced. In *Hall*, the defendant argued that

> some of the trial court's findings of fact were "mere conclusions." Specifically, defendant argue[d] that four of the trial court's findings of fact were not findings of fact, but mere conclusions. Assuming, arguendo, that those findings of fact were only conclusions, the record still contains findings of fact, not challenged by defendant or already determined to be supported by competent evi-

dence by this Court, to support the trial court's "best interest" determination.

*Id.* at 532, 655 S.E.2d at 905. The *Hall* court then noted the specific findings of fact not challenged on appeal that would have supported the trial court's conclusions even in the absence of the contested findings. *Id.* at 532-33. The unchallenged findings of fact in *Hall* show quite clearly why the trial court concluded that an award of primary custody to the plaintiff was in the child's best interest.

> Specifically, finding of fact number eight states that plaintiff "took the children for haircuts, bought their clothes and school supplies, volunteered at their school and was a room mother, and took the children on play dates." The trial court also found that plaintiff took the children to the doctor and stayed home with them when they were ill. Finally, the trial [court] found as a fact that plaintiff took a six month leave of absence from her employment to stay with Christiana when she was born and a five month leave when Steven was born.
>
> Contrary to these findings, the trial court found that defendant would only "occasionally take the children to the doctor, would sometimes attend birthday parties and would volunteer at school on occasion." Moreover, "[d]efendant's work schedule was unpredictable and he was regularly out of town one to three nights each week." The trial court also found that "[d]efendant countermanded [p]laintiff on a number of occasions when she ... was disciplining the children [,]" referred to Christiana as a " 'drama queen,' " and Steven as a " 'Mama's boy.' " Finally, the trial court found that "[d]efendant 'body slammed' the [p]laintiff 20 to 50 times during the marriage[, and] threatened to punch his brother-in-law in the nose." Under N.C. Gen.Stat. § 50-13.2(a), a relevant factor in making a custody determination is "acts of domestic violence between the parties[.]" Under such circumstances, we cannot say that the trial court committed a manifest abuse of discretion in awarding plaintiff primary physical custody of the children. Although defendant argues that the trial court should have made less complimentary findings as to plaintiff, we are not in a position to re-weigh the evidence.

*Id.* (footnote omitted).

Defendant also incorrectly identifies the standard of review applicable to the issue of whether the findings of fact support the conclusions of law as abuse of discretion, arguing that "[t]here was obviously no manifest abuse of discretion on the trial court's part in awarding [George]'s primary custody to the Appellee/mother." The proper standard of review is *de novo*: "Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo*." *Id.* at 530, 655 S.E.2d at 904 (citation omitted).

Although a custody order need not, and should not, include findings as to each piece of evidence presented at trial, it must resolve the material, disputed issues raised by the evidence.

> [A] custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child, and custody orders are routinely vacated where the "findings of fact" consist of mere conclusory statements that the party being awarded custody is a fit and proper person to have custody and that it will be in the best interest of the child to award custody to that person. A custody order will also be vacated where the findings of fact are too meager to support the award.

*Dixon v. Dixon*, 67 N.C. App. 73, 76-77, 312 S.E.2d 669, 672 (1984) (citations omitted).

The quality, not the quantity, of findings is determinative. This custody order contains eighty findings of fact, but Plaintiff correctly notes that many of the findings of fact are actually recitations of evidence which do not resolve the disputed issues. The findings also fail to resolve the primary issues raised by the evidence which bear directly upon the child's welfare. As noted in *Dixon*,

> the findings in a custody order "bearing on the party's fitness to have care, custody, and control of the child and the findings as to the best interests of the child must resolve all questions raised by the evidence pertaining thereto." *In re Kowalzek*, 37 N.C.App. 364, 370, 246 S.E.2d 45, 48 (1978). In *Kowalzek*, the court found that questions concerning the wife's leaving her husband and child, and her subsequent failure to inquire about her child for several months after being notified of her hus-

band's death were not resolved in the order awarding her custody, and the order was vacated.

*Id.* at 78.

The primary disputed issues regarding the child's welfare in this case were defendant's allegations of excessive alcohol consumption by plaintiff, conflicts in the parties' parenting styles, and George's resulting anxiety. The order makes findings regarding the evidence and contentions of each party on these issues, but resolves few of them.

One area of dispute which may bear directly upon the child's welfare is the extent of consumption of alcoholic beverages by each party.[3] Defendant alleged in her custody counterclaim that plaintiff drinks to excess frequently and that his drinking has interfered with his relationship with George:

> J. Since the parties separated, the Plaintiff has called [George] once per day between 9:30 p.m. and 10:00 p.m., which is after the start of his bedtime routine and the conversation between the Plaintiff and [George] has never lasted more than two minutes. On several occasions when the Plaintiff has called, his speech has been slurred due to alcohol consumption and/or the call was placed from a bar.
>
> K. The Plaintiff consumes excessive quantities of alcohol. Upon the Defendant's information and belief he consumes at least 24 beers every day and a half. Thursday through Sunday the Plaintiff drinks to the point of obvious intoxication.

Of course, plaintiff denied these allegations in his reply and at trial. The parties presented extensive evidence regarding these contentions, and the trial court made numerous findings which mention alcohol consumption:

> 29. The extent of Mr. Carpenter's consumption of malt beverages is in some dispute although he acknowledges drinking with some frequency and alcohol was involved

---

3. N.C. Gen. Stat. § 50-13.2(b2) (2012) was added to § 50-13.2 as of 1 December 2012 to provide that "Any order for custody, including visitation, may, as a condition of such custody or visitation, require either or both parents, or any other person seeking custody or visitation, to abstain from consuming alcohol[.]" Although this statutory provision was not in effect at the time of the trial court's order, this amendment indicates that the General Assembly has recognized the importance of alcohol abuse in a custody case.

when he wrecked a 4-wheeler in 2010. Mr. Carpenter has vacationed at the beach in July 2010 and July 2011.

. . . .

34. The Plaintiff, Jason Donald Carpenter's mother has been in rehabilitation associated with the misuse of alcoholic beverages on several occasions including two times in the past two years.

35. The Plaintiff, the Defendant and Josh Sigmon socialized at the parties' former marital residence. Socialization involved the consumption of alcoholic beverages. Mr. Sigmon acknowledges having seen Mr. Carpenter drunk on a few occasions and reports having seen Ms. Carpenter drunk at some time. Ms. Carpenter was the designated driver for Mr. Carpenter and Mr. Sigmon and others at other times. There is no evidence that Mr. Carpenter was ever a designated driver.

. . . .

40. That Ms. Caulder [defendant's mother] reports that the separation of the parties in February 2010 was occasioned by the Defendant telephoning and advising that Jason had demanded that she, Jessica, and [George] leave the house which was associated with Jason's consumption of alcohol.

. . . .

43. Marcus Setzer is a 21 year old resident of Claremont, North Carolina, who worked at Rock Barn Country Club with the Plaintiff. Mr. Setzer and the Plaintiff enjoyed hunting, 4 -wheeling and drinking although, drinking is usually contraindicating [sic] for hunting and 4-wheeling activities.

. . . .

57. Both the Plaintiff and the Defendant consumed alcoholic beverage during their marriage. The Defendant contending that the Plaintiff consumed beer in greater quantities than did she.

58. The Plaintiff frequently took hunting and fishing trips and Mr. Carpenter frequently shared after work

companionship with his friends Lane, David, Josh, Stan and others in the attached garage at the former marital residence which was frequently accompanied by the consumption of malt beverages.

None of these findings resolve the real issue, which upon the pleadings and evidence in this case was whether plaintiff abuses alcohol to an extent that it may have an adverse effect upon George. Findings 35 and 40 are recitations of testimony by various witnesses about their observations of plaintiff and are not really findings of fact. Findings 29 and 57 recognize the existence of dispute between the parties as to the extent of plaintiff's drinking. Finding 34 does not address the parties at all and fails to explain why plaintiff's mother's problems with alcohol abuse may be relevant to the issue of custody of George. Findings 43 and 58 show that plaintiff at some point in time has gone hunting, fishing and four-wheeling with his friends and has consumed alcohol during these activities.

The findings merely recognize the existent of a dispute and some evidence which may bear upon that dispute without resolving it. There are no findings that either party actually does abuse alcohol or that either party's drinking has adversely affected George, although the findings tend to indicate that the plaintiff drinks more than defendant and that his drinking has caused at least one adverse consequence, the wreck of a 4-wheeler in 2010. As the trial court ordered that neither party consume alcohol in George's presence, the trial court may have had some concern about the potential effect upon George, but the findings fail to resolve the issue.

Another area of dispute was the different parenting styles of the parties and their communication difficulties. Plaintiff argues that the trial court failed to explain why awarding defendant custody is in George's best interest, given that there were negative findings about defendant and that "[t]he evidence presented during the hearing favors Plaintiff with respect to his job situation and certainly the child's emotional situation as it is exemplified by this asinine practice of sleeping with parents." Essentially, the trial court found that the parties do have different parenting styles and that the parties' communication difficulties have caused George anxiety. The trial court also found that the parties disagree on the practice of sleeping with George and that the absence of a resolution to this dispute is harmful to George; the trial court has the authority to resolve this dispute but failed to do so. Although we do not necessarily agree with plaintiff's characterization of the evidence as "favoring" him, the trial court did

make negative findings about both parties in regard to the child's emotional welfare. For example, the trial court found as follows:

> 47. Ms. Carpenter did not advise Mr. Carpenter of [school counselor] Ms. Totty's counseling with [George]. When Mr. Carpenter was apprised of the ongoing counseling he was upset and communicated with Ms. Totty about his concerns involving being left out of the loop, but did not impede or frustrate Ms. Totty's continuing counseling with [George]. Ms. Totty saw [George] about ten times during his kindergarten year and has seen [George] one or two times this year. Ms. Totty reports that it is apparent that [George] loves his father.
>
> . . . .
>
> 49. Ms. Hoffman's findings in [psychological] counseling with [George] are consistent with external observations of the Plaintiff and the Defendant, that is to say the Plaintiff is more prone to be firm in his parenting style while the Defendant is more prone to [casual] as her parenting style. Ms. Hoffman has had eight consultations with [George].
>
> . . . .
>
> 51. The inconsistent parenting styles of the Plaintiff and Defendant have not been adequately addressed by the Defendant or the Plaintiff such that [George] can have some measure of consistency when he is in the physical custody of either parent.
>
> 52. The counselor made suggestions that [George] should continue to sleep with his mother and begin to sleep with his father are likely to cause long term issues for [George] unless the Plaintiff and the Defendant moderate their differences.
>
> . . . .
>
> 59. Both the Plaintiff and the Defendant love [George] but each expresses a manifest [sic] of love in polar opposite manners.
>
> . . . .
>
> 71. The Defendant's lack of gainful employment outside of the home and her failure to make diligent efforts to

become employed after [George] began school in August 2010 have led her to adopt a posture of being over engrossed in and overly protective of [George].

. . . .

80. The efforts of the Plaintiff and Defendant to attend co-parenting classes in the fall of 2011 have fallen by the wayside.

In contrast to the issue of alcohol consumption, where the findings to favor defendant, here the findings favor plaintiff to some extent. Although the findings regarding George's counseling not quoted above are primarily recitations of evidence, overall the order indicates that defendant has interfered with plaintiff's relationship with George and his participation in counseling and has been overly protective of George. For example, finding 52, regarding the hotly contested issue of co-sleeping, appears to be at least in part a recitation of evidence and not a true finding, as it simply states what the counselor suggested. The only positive finding seems to be that both parties love George, which is not disputed by either party. Again, these findings do not shed any light upon the rationale for the trial court's ultimate conclusion of what is in George's best interest.

The order addresses other disputed issues, such as the residential situations of each party and their financial provision for George, in similar fashion, without relating the findings to George's needs or best interest. It is difficult to discern the meaning of some of the findings, or at least how the findings relate to the child's welfare. For example, finding 79 states that "Jessie Wayne Haynes is a 22 year old friend of the Plaintiff. Traci Sigmon is a 25 year old friend of the Plaintiff. Both are males." There is no other mention of either of these persons in the order, so we do not know why they are mentioned or what they have to do with George. Finding 72 states that "[George] has returned from visitation with his father with muddy shoes and dirty clothes." We are unable to discern if this is a positive finding, as it may indicate that plaintiff has been engaging in healthy outdoor activities with his son, or if it is negative, as it may indicate that plaintiff has failed to properly address the child's hygiene issues. Perhaps it is both.

Overall, the trial court's findings of fact do not resolve the primary disputes between the parties and do not explain *why* awarding primary custody of George to defendant is in George's best interest, and for this reason we must reverse the order and remand to the trial

court for additional findings of fact, as well as conclusions of law and decretal provisions based upon those findings.

The findings should resolve the material disputed issues, or if the trial court does not find that there was sufficient credible evidence to resolve an issue, should so state. *See Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986) ("[A]s is true in most child custody cases, the determination of the evidence is based largely on an evaluation of the credibility of each parent. Credibility of the witnesses is for the trial judge to determine, and findings based on competent evidence are conclusive on appeal, even if there is evidence to the contrary." (citations omitted)). The findings of fact should resolve the disputed issues clearly and relate these issues to George's welfare; the conclusions of law must rest upon the findings of fact. *See id.*; *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

This remand may be a Pyrrhic victory for plaintiff, as the evidence presented at trial was more than adequate to support findings of fact which would support a conclusion of law that granting primary custody to defendant is in George's best interest, but this Court is not at liberty to make this determination.

> Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble*, 300 N.C. at 714, 268 S.E.2d at 190.

On remand, the trial court shall make additional findings of fact based upon the evidence presented at the trial.[4] As additional guidance on remand, we also note that the trial court's order did not actu-

---

4. We do *not*, as requested by plaintiff on appeal, vacate the trial court's order and remand "for a new trial." The record contains sufficient evidence to support findings of fact and conclusions of law supporting an award of primary custody to defendant; the trial court simply failed to make those findings.

ally state that it was granting "joint custody" to the parties, but instead provided as follows:

1. [George] is placed in the primary care, custody and control of the Defendant, Jessica Delores Carpenter.

2. [George] is placed in the secondary care, custody and control of the Plaintiff, Jason Donald Carpenter[.]

The order then sets forth a detailed schedule for physical custody of George.[5] The order also provides that each party will have full access to George's medical, dental, and educational information, although this would be true even in the absence of this provision. *See* N.C. Gen. Stat. § 50-13.2(b) (2011) ("Absent an order of the court to the contrary, each parent shall have equal access to the records of the minor child involving the health, education, and welfare of the child.") The order appears to grant joint legal and physical custody of George to the parties, but the order never mentions legal custody, although it does mention "control" as part of its decree, which may imply "legal custody."[6] *See Peters,* ___ N.C. App. at ___, 707 S.E.2d at 736 ("Legal custody refers generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare." (citations and quotation marks omitted)). We note that joint custody

> implies a relationship where each parent has a degree of *control* over, and a measure of responsibility for, the child's best interest and welfare. Nevertheless, in the absence of a controlling statutory definition . . . of the term 'joint custody,' difficulties may arise where the . . . [court] use[s] the term without detailing the means of its implementation.

*Patterson v. Taylor,* 140 N.C. App. 91, 96, 535 S.E.2d 374, 378 (2000) (emphasis added) (citation omitted).[7] Given the substantial commu-

---

5. We have treated the order as granting joint legal and physical custody in this opinion, as the parties have not argued otherwise on appeal.

6. In contrast to this custody order, we note that the temporary custody order entered by the trial court on 4 November 2012 did specifically grant "joint legal custody" to both parties and "primary legal custody" to defendant as well as setting out the schedule for plaintiff's physical custody of George.

7. Chapter 50 does not define "legal custody" or "joint custody." N.C. Gen. Stat. § 48-1-101(9) (2011) defines "legal custody" as "the general right to exercise continuing care of and control over the individual as authorized by law, with or without a court order, and: a. Includes the right and the duty to protect, care for, educate, and discipline the indi-

nication difficulties and different parenting styles of the parties, on remand it may be advisable for the trial court to define its grant of legal and physical custody of George more clearly, as failure to do so may increase the opportunities for discord between the parties.

REVERSED AND REMANDED.

Judges HUNTER, JR., Robert N. and DAVIS concur.

_____

vidual; b. Includes the right and the duty to provide the individual with food, shelter, clothing, and medical care; and c. May include the right to have physical custody of the individual." N.C. Gen. Stat. § 48-1-101(12) (2011) defines "physical custody" as "the physical care of and control over an individual." Although these definitions are not controlling here, the fact that they both include some measure of control demonstrates why the trial court's use of the term "care, custody, and control" in the decretal portion of the order is confusing without use of the terms "legal custody" or "physical custody" and additional detail.