IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-999

Filed 3 September 2025

Burke County, No. 20CVD000161

MERIDITH ADAMS, Plaintiff,

v.

DAVID DILLON and BRITTANY DILLON, Defendants,

v.

KIMBERLY TRAVIS, Intervenor.

Appeal by defendant from judgment entered 12 February 2024 by Judge
Wesley Barkley in Burke County District Court.  Heard in the Court of Appeals 14
August 2025.

*Wesley E. Starnes, PC, by Wesley E. Starnes, for the plaintiff-appellant.*

*No brief filed on behalf of the defendant-appellees, David Dillon, and Brittany
Dillon, and intervenor-appellee, Kimberly Travis.*

TYSON, Judge.

Meridith Adams ("Plaintiff") appeals from a child custody order entered 12
February 2024 awarding full custody of the minor child ("B.D.") to Kimberly Travis
("Intervenor").  We affirm.

## I.    Background

B.D. was born to David and Brittany Dillon ("Defendants") 21 August 2018.

*See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Defendants are parents to three other children, none of which reside with them. Defendants were known drug users, and B.D. tested positive for methadone in her bloodstream at birth. Plaintiff began caring for B.D. and spending substantial time with her shortly after her birth. By November 2018, Plaintiff was caring for B.D. most weekdays, including her staying with Plaintiff overnights.

Around B.D.'s first birthday, Defendants began to use drugs more heavily, which resulted in a higher demand for childcare by Plaintiff. Defendants ultimately gave over all parental duties to Plaintiff and only saw B.D. every other weekend. At this point, Intervenor, B.D.'s maternal grandmother, moved to intervene and gain custody of B.D.

A Temporary Custody hearing was held 31 July 2020, which resulted in an Interim Custody Order for a non-party, B.D.'s maternal great-aunt, to have custody of B.D., with Plaintiff having visitation. A Temporary Custody order was entered on 5 November 2020 giving custody of B.D. to Intervenor and visitation every other weekend and Wednesday to Plaintiff. The issue of permanent custody was heard between August 2022 and November 2023.

Concerns over Intervenor's history of alcohol abuse were raised before the trial court, resulting in Intervenor completing a Substance Abuse Assessment on 4 August 2020. The assessment found and concluded Intervenor had abused alcohol in the past and suffered from a binge drinking pattern, which had subsided as of January 2020.

Plaintiff contended Intervenor was currently abusing alcohol as the child custody order was pending. Plaintiff offered into evidence a voicemail Intervenor had left for her on 8 November 2020, while Intervenor had temporary custody of B.D., which allegedly proved her continued alcohol abuse.

At the end of trial, the court ordered and awarded permanent custody of B.D. to Intervenor without visitation with Plaintiff on 12 February 2024. Plaintiff appeals.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 7B-1001(a)(4) (2023).

## III. Issues

The issues on appeal are: (1) whether the evidence at trial supported several of the trial court's findings of fact; (2) whether the trial court delegated a judicial function to Intervenor by allowing the trial court to increase Defendant-Parents' visitation with B.D. if they maintained their sobriety; and, (3) whether the trial court's findings support its conclusions of law.

## IV. Findings of Fact

Plaintiff argues several of the trial courts' findings of fact were not supported by substantial evidence. We disagree.

### A. Standard of Review

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine

the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). "In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law." *Id.* at 475, 586 S.E.2d at 254.

"Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." *Everette v. Collins*, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798 (2006). "[A]n error of law is an abuse of discretion." *Da Silva v. WakeMed*, 375 N.C. 1, 5 n.2, 846 S.E.2d 634, 638 n.2 (2020); *Sen Li v. Zhou*, 252 N.C. App. 22, 26, 797 S.E.2d 520, 523 (2017) ("An error of law is by definition an abuse of discretion." (citing *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384, 405, 110 L.Ed.2d 359, 382 (1990)).

## B. Analysis

North Carolina law and precedents require trial courts to adjudicate and make findings to resolve all material issues raised by the evidence and to explain how those issues relate to the child's welfare and best interests in their custody orders. *Carpenter v. Carpenter*, 225 N.C. App. 269, 273, 737 S.E.2d 783, 787 (2013) ("Although a custody order need not, and should not, include findings as to each piece of evidence presented at trial, it must resolve the material, disputed issues raised by the evidence."). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare

of the child." *Hall v. Hall*, 188 N.C. App. 527, 532, 655 S.E.2d 901, 905 (2008) (citation omitted).

Our General Statutes mandate: "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2023). Under Rule 52, the trial court's adjudication and findings of fact must contain the "specific ultimate facts sufficient for an appellate court to determine that the judgment is adequately supported by competent evidence." *Williamson v. Williamson*, 140 N.C. App. 362, 363-64, 536 S.E.2d 337, 338 (2000) (internal marks omitted).

"[V]erbatim recitations of the testimony" do not qualify as findings of fact "because they do not reflect a conscious choice between the conflicting versions of the incident in question." *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195, n.1 (1984).

"The trial court is given broad discretion in child custody and support matters" and the court's "order will be upheld if substantial competent evidence supports the findings of fact." *Meehan v. Lawrence*, 166 N.C. App. 369, 375, 602 S.E.2d 21, 25 (2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gavia v. Gavia*, 289 N.C. App. 491, 493, 890 S.E.2d 531, 534-35 (2023) (*quoting Shipman*, 357 N.C. at 474, 586 S.E.2d at 253). Whether the "findings of fact support the trial court's

conclusions of law is reviewable *de novo.*" *Carpenter*, 225 N.C. App. 269, 270, 737 S.E.2d 783, 785 (2013) (citing *Hall*, 188 N.C. App. at 530, 655 S.E.2d at 904).

### 1. Intervenor's Alcohol Abuse

Plaintiff first argues Finding of Fact 29 is not supported by competent evidence because competent evidence was presented at trial indicating Intervenor had used alcohol while caring for B.D. Finding of Fact 29 states:

> The Court will find that Ms. Travis, in the past, has abused alcohol, including up to and until October 2019, when she required hospitalization for alcohol concentration in excess of .27. However, the Court finds that there has been no evidence of continued abuse of alcohol or other substances by Ms. Travis while the child has been placed with her or in any way that has impeded the child's care.

Plaintiff points to an admitted voicemail Intervenor had left on 8 November 2020, and Plaintiff argues Intervenor was intoxicated because her speech sounded slurred. Plaintiff also points to a conversation Intervenor had with the Department of Social Services ("DSS") on 14 May 2020, wherein Intervenor reportedly stated she "does not drink much but . . . [had] ended up on a bender." While this purported statement by Intervenor was included in DSS records admitted into evidence, Intervenor was not questioned about this statement before the trial court.

Intervenor testified and was questioned extensively about how she had abused alcohol in the past and her current alcohol use. She testified to the following:

Q. Okay. Do you drink alcohol?

A. I do not.

Q. When's the last time you consumed alcohol?

A. Probably four years ago.

Q. Okay. There was a recording that was previously played in this case. It was a voicemail left on Ms. Adams' phone. Do you recall that voicemail?

A. I do.

Q. You heard the play -- you heard it played in court.

A. I did.

Q. Was that you on the voicemail?

A. It was.

Q. Had you consumed any alcohol that day?

A. No. I had not.

Q. Okay. Do you -- I think there was an allegation that your words, your speech was perhaps slurred during that. Did you -- did you hear the message?

A. I did.

Q. Were you under the influence of any impairing substances?

A. No. I was just heartbroken.

Q. Had you had any impairing substances prior to or after that?

A. No.

Intervenor also completed a substance abuse assessment on 4 August 2020.

The assessment included the following description:

> Client is a 56-year-old Caucasian female with 2 biological children. Client has worked full-time plus a PRN position as a respiratory therapist for the past 16 years. Client had planned to have her almost 2-year-old granddaughter move in with her on 8/31/2020 with FMLA to make the transition before this DSS case started. Client reported that the grandchildren live with an aunt for temporary custody while the custody case is being decided . . . . Client reported having a brief period of alcohol abuse, which became a severe disorder with a binge drinking pattern of use every 4-5 weeks during her 50s. Client reported last use of alcohol to have been in Jan., 2020. Client reported she made up her mind to give it up due to not wanting any of the consequences and getting the shakes from it scared her; she also wanted to be healthy to care for and spend time with her grandchildren. Client reported only ever missing one day of work due to alcohol abuse. Client reported having a strong support system at her church and also at work. Client reported having attended both AA and Beyond Recovery meetings in the past. . . . Client endorsed no triggers for alcohol use since Jan., 2020. Should client experience any difficult stressors in the future, she is recommended to make effective use of her support system, including attending AA/Beyond Recovery Meetings as appropriate.

Our Supreme Court has held: "The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment and the legal conclusions which underlie it represent a correct application of the law." *Coble v. Coble*, 300 N.C. 708, 712, 268 SE 2d 185, 189 (1980). "The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead 'to dispose of the issues raised by the pleadings and to allow the

appellate courts to perform their proper function in the judicial system.'" *Id.* (first quoting *Montgomery v. Montgomery*, 32 N. C. App. 154, 158, 231 S.E.2d 26, 29 (1977); then citing *Crosby v. Crosby*, 272 N.C. 235, 158 S.E.2d 77 (1967)).

Plaintiff cites *McKinney v. McKinney* and argues this Court should reject findings of fact holding "no evidence" existed to support a finding when some evidence was presented. 253 N.C. App. 473, 478, 799 S.E.2d 280, 284 (2017). In *McKinney*, the district court found father in civil contempt for failing to comply with the custody order between him and mother. *Id.* at 477, 799 S.E.2d at 284. Their child, Max, had run away to live with father for one month. *Id.* The district court found Max had ran away from mother's house on his own because "[f]ather lives a wealthy lifestyle and Max likes the way he lives when he is with him." *Id.* at 478, 799 S.E.2d at 284. "The district court further found that [f]ather never told Max to run away from [m]other; and [f]ather 'enticed' Max to stay with him because of [f]ather's lifestyle." *Id.*

On appeal, father contested the portions of the district court's order finding "'[t]here was *no evidence* presented that the Defendant [f]ather instructed [Max] that he had to abide by the [custody orders]'" and "'[t]here was *no evidence* presented that the Defendant Father secured transportation after August 13, 2014, and told the child to get in the car or plane.'" *Id.* This Court found those findings were not supported by the evidence because "[f]ather stated several times during his testimony that he told Max that Max needed to go back home to [m]other" and "[f]ather did state that he was willing to provide transportation but that Max was simply not willing to

go." *Id.* While the district court was free to find no credible evidence was presented, the district court erred by holding "no evidence" existed. *Id.*

Here, both parties presented conflicting evidence regarding whether Intervenor sounded intoxicated on the voicemail. No definitive proof tended to show Intervenor was intoxicated on the day she left the voicemail for Plaintiff or when the purported "bender" in the DSS records had occurred. Intervenor testified she had not used alcohol in years. The Substance Abuse Assessment found Intervenor had displayed no alcoholic tendencies at the time it was completed in 2020. Intervenor and other witnesses testified her voice sounded like she was crying on the voicemail, not like she was intoxicated. These facts differ from *McKinney* because, although conflicting evidence was presented about the exact date Intervenor stopped abusing alcohol, no direct evidence existed indicating Intervenor had continued to consume alcohol after she received treatment at the end of 2019. *Id.*

The trial court is in the best position to hear the testimonies and evidence, determine credibility, and weigh the evidence. *Efstathiadis v. Efstathiadis*, 296 N.C. App. 605, 608-09, 909 S.E.2d 737, 741 (2024) ("It is within the trial court's purview to weigh the evidence and consider credibility, including 'contrary evidence,' not this Court's."). "Credibility of the witnesses is for the trial judge to determine, *id.,* and findings based on competent evidence are conclusive on appeal, even if there is evidence to the contrary." *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986) (citing *Crosby*, 272 N.C. 235, 158 S.E.2d 77). The trial court's finding

regarding Intervenor's history of alcohol abuse was supported by competent evidence and is binding on appeal. *Id.*; *Efstathiadis*, 296 N.C. App. at 608-09, 909 S.E.2d at 741.

### 2. *Length of Time B.D. was in Plaintiff's Care*

Plaintiff next contends Findings of Fact 17, 22, 23, 24, 25, and 27 are not supported by competent evidence and asserts B.D. was in her care for longer than eight months. Presuming Plaintiff was in B.D.'s life and cared for B.D. for a longer period of time, the trial court could not definitively conclude B.D. was in the sole care of Plaintiff for more than eight months, due to the unorganized nature of B.D.'s childcare schedule and Plaintiff's lack of documentation. The trial court was in the best possible position to adjudicate, weigh, and resolve the evidence concerning who was caring for B.D. and for how long. We defer to the trial court's findings and supported conclusions, absent clear proof to the contrary. *Id.* Plaintiff's argument is overruled.

### 3. *Parenting Styles of Plaintiff and Intervenor*

Plaintiff argues Findings of Fact 34 and 35 are not supported by competent evidence because "the record is devoid of any evidence of confusion of B.D. concerning discipline" or that Plaintiff's parenting style, which the trial court found "diametrically opposed [to Intervenor's] parenting style," had caused potty training or behavioral issues.

Evidence was presented at trial tending to show B.D. "constantly ha[d]

accidents," "thr[e]w fits," spit in someone's face, and smeared feces on the wall after returning from visits with Plaintiff. Plaintiff also testified about a time Plaintiff and Intervenor had disagreed over how to handle correcting B.D. after she had wet her pants. The trial court was in the best possible position to adjudicate, weigh, and resolve the evidence concerning whether Plaintiff and Intervenor had opposing parenting styles that had negatively affected B.D. The trial court's findings were supported by competent evidence. *Id.* Plaintiff's arguments are overruled.

### 4. *Other Issues Raised by Evidence*

Plaintiff argues the trial court erred by failing to adjudicate and resolve certain inconsistencies in the evidence presented at trial. More specifically, Plaintiff asserts the trial court failed to address: (1) Intervenor's reluctance to acknowledge her attention deficit hyperactivity and anxiety disorders and prior hallucinations; (2) evidence concerning Intervenor's alcohol abuse, including her inability to remember certain details; (3) Intervenor's purported inability to recognize substance abuse issues in the Defendant-Parents; (4) the reason Defendant-Parents had moved to change B.D.'s placement from Plaintiff to B.D.'s great aunt was because there was a six-week period where they could not visit B.D., which Intervenor purports was due to the COVID-19 pandemic lockdown; and, (5) Defendant-Parents' mental health conditions. Plaintiff argues the trial court's failure to address these issues fails to comply with N.C. Gen. Stat. § 50-13.2(a) (2023), which requires the trial court to "consider all relevant factors" and "include written findings of fact that reflect the

consideration of each of these factors and that support the determination of what is in the best interest of the child" when awarding custody. *See also* N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2023).

The trial court made findings based on competent evidence regarding these factors, even if the trial court's findings were contrary to Plaintiff's interpretation of the extensive evidence presented at trial. The trial court repeatedly acknowledged Defendant-Parents' drug abuse, and the trial court also acknowledged Intervenor's prior alcohol abuse. The trial court's decree gave Intervenor the ability to request any drug screen at ninety-day intervals and allows Intervenor to inspect the home monthly, which will allow her to confirm whether Defendant-Parents are maintaining sobriety.

The trial court repeatedly acknowledged Defendant-Parents' past shortcomings, but also found Defendant-Parents "have made significant strides in improving their situation," "have stable jobs," "have not tested positive for any illegal substances in excess of one year," have not had "any criminal charges or DVPOs filed within the past year," and their home "does meet minimum standards" to have a child in their home.

The trial court made findings indicating Plaintiff had brought B.D. to DSS when custody was transferred to B.D.'s great aunt. Although the trial court mentioned a six-week period where Defendant-Mother had no contact with B.D., the trial court did not find it was based on any malfeasance by Plaintiff, even if the trial

court did not explicitly reference the COVID-19 pandemic. Instead, the trial court repeatedly found Plaintiff had maintained a good relationship with Defendant-Mother and Intervenor for a long period of time and "these parties continued to get along to the extent the Court required to continue visitation."

While Plaintiff may have desired the trial court to make additional findings about the evidence presented at trial or to reach opposite conclusions about the evidence presented, the trial court made sufficient findings about Intervenor's alcohol abuse based upon competent evidence. *See Efstathiadis*, 296 N.C. App. at 608-09, 909 S.E.2d at 741; *Woncik*, 82 N.C. App. at 248, 346 S.E.2d at 279; *Carpenter*, 225 N.C. App. at 273, 737 S.E.2d at 787.

## V. Trial Court's Responsibility to Decide Custody

Plaintiff argues the trial court erred as a matter of law by delegating a judicial function to Intervenor. Plaintiff asserts the trial court effectively delegated a judicial function to Intervenor because the trial court's decree granted Defendant-Parents a minimum amount of visitation with B.D., with Intervenor's discretion to "increase visitation with the Defendant[-]Parents if [Intervenor] deems the parties are in a safe and sober state."

Plaintiff cites *In re Custody of Stancil*, 10 N.C. App. 545, 179 S.E.2d 844 (1971), to support her argument. "When the custody of a child is awarded by the court, it is the exercise of a judicial function." *Id.* at 552, 179 S.E.2d at 849 (citing N.C. Gen. Stat. § 50-13.2 (2023)). This Court explained:

> To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.
>
> When the question of visitation rights of a parent arises, the court should determine from the evidence presented whether the parent by some conduct has forfeited the right or whether the exercise of the right would be detrimental to the best interest and welfare of the child. If the court finds that the parent has by conduct forfeited the right or if the court finds that the exercise of the right would be detrimental to the best interest and welfare of the child, the court may, in its discretion, deny a parent the right of visitation with, or access to, his or her child; but the court may not delegate this authority to the custodian. On the other hand, if the court does not find that the parent has by conduct forfeited the right of visitation and does not find that the exercise of the right would be detrimental to the best interest and welfare of the child, the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place and conditions under which such visitation rights may be exercised.

*Id.*

Here, the trial court did not delegate a judicial function by allowing visitation between B.D. and Defendant-Parents. Unlike in *In re Custody of Stancil*, where the trial court "fail[ed] to include in the custody order a provision defining and establishing the time, place[,] and conditions under which such visitation rights might be exercised," the trial court established a minimum amount of time for visitation between B.D. and Defendant-Parents with the opportunity to extend if Defendant-Parents remained appropriate and sober. *Id.* at 553, 179 S.E.2d at 849.

- 15 -

Defendant Parents are the biological parents of B.D., and their parental rights have not been terminated. Plaintiff's argument is overruled.

## VI.    Findings Support the Conclusions of Law

Plaintiff argues the trial court's findings of fact about Plaintiff do not support its conclusion to award custody of B.D. to Intervenor and visitation to Defendant-Parents. Plaintiff cites *Aguilar v. Mayen* to support her assertion. 293 N.C. App. 474, 901 S.E.2d 662 (2024).

The Court in *Aguilar* held a trial court's decision to grant sole custody to Mother instead of joint custody between Mother and Father was not supported by adequate findings of fact:

> Although substantial evidence supports the trial court's finding that Mariana was well cared for by Mother, the trial court further found that Father and Brittany also took good care of Mariana. In other words, the trial court found that Mother, Father, and Brittany *all* provided good care for Mariana: '[T]he minor child has been well cared for through her life, solely by Mother for the first year of her life, then jointly by the Mother, Father, and Father's wife for the next 6 months.' This finding of fact does not explain why it is in Mariana's best interests that Mother be granted sole custody of Mariana. We do not express an opinion on whether sole or joint custody is appropriate or even on which party is the best-suited to exercise sole custody if the trial court sees fit to order sole custody. We do, however, hold that the trial court's finding that all parties provided adequate care for Mariana, in the absence of other findings, does not support its conclusion that Mother should be granted sole custody.

*Id.* at 482, 901 S.E.2d at 668.

Here, the facts differ from the facts in *Aguilar*. The trial court made the following finding of fact regarding why sole custody should be provided to Intervenor over Plaintiff:

> 39. As to Plaintiff, Ms. Adams, the Court finds that she stepped up during the child's most important time of need when she was born until about eight months old, she was the primary care provider. She has developed a very detailed relationship with the child, there is no question that she loves the child very much, however, the Court finds that her very appropriate style of parenting is diametrically opposed to the parenting styles not only of the biological Defendant[-]Parents but as well as Intervenor, Ms. Travis, and her lack of contact with any of [B.D.]'s siblings, not by choice, but by the facts of this case, and the continued animosity that has existed and that will continue to exist between the parties in this courtroom indicates that a continued contact with Plaintiff, Ms. Adams, would not be in the best interest of this child. The Court recognizes that ceasing visitation in one single day would not be in the best interest of any party, however, the Court orders that a gradual disengagement begin and indicate[s] that continued contact continues a conflict that's been evident in the child's behavior. Therefore, the Court grants disconnect visitation of every other weekend throughout the month of December, not to include the Wednesday visitation. This does not prevent any contact allowed by the Intervenor. This Court would make findings in the records that Ms. Adams has saved this child's life at a time when the child needed her to step in, but the Court views that in a role as a very dedicated foster style parent.

The trial court made detailed and supported findings of fact indicating why such a sole placement is in B.D.'s best interest. These findings expressly acknowledge Plaintiff "saved this child's life at a time when the child needed her to step in", but

also adequately explains the conflicts and confusion to the child over differing parenting styles, B.D.'s assimilation and relationship with her nuclear family, and supports the trial court's decision to grant sole custody of B.D. to Intervenor, her maternal grandmother, and visitation with her parents. *See id.*; N.C. Gen. Stat. § 50-13.5(j) (2023). Plaintiff's argument is without merit.

## VII. Conclusion

The trial court made detailed findings of fact that are supported by an adjudication and resolution of conflicting and competent evidence. The trial court's conclusions of law are supported by its findings of fact. The order appealed from is affirmed. *It is so ordered.*

AFFIRMED.

Judges ARROWOOD and CARPENTER concur.